

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

PLYMOUTH COUNTY RETIREMENT SYSTEM,)
INDIVIDUALLY AND ON BEHALF OF ALL )
OTHERS SIMILARLY SITUATED          )
                                   )
    VS.                            )    1:19-CV-982  CMH/MSN
                                   )
                                   )    ALEXANDRIA, VIRGINIA
                                   )       JULY 22, 2020
                                   )
GTT COMMUNICATIONS, INC.,          )
RICHARD D. CALDER, JR., CHRIS      )
MCKEE, MICHAEL SICOLI AND          )
GINA NOMELLINI                     )
_____)

_____

**TRANSCRIPT OF INITIAL PRETRIAL CONFERENCE
BEFORE THE HONORABLE MICHAEL S. NACHMANOFF
UNITED STATES MAGISTRATE JUDGE
VIA ZOOM**
_____

**Proceedings reported by stenotype, transcript produced by**

**Julie A. Goodwin.**

Julie A. Goodwin, CSR, RPR

2

**A P P E A R A N C E S**

FOR THE LEAD COUNSEL FOR LEAD PLAINTIFF AND THE PROPOSED CLASS:
     SAXENA WHITE P.A.
     By:  MS. KYLA GRANT
     10 Bank Street
     Eighth Floor
     White Plains, New York  10606
     914.437.8551
     kgrant@saxenawhite.com

     SAXENA WHITE P.A.
     By:  MR. LESTER R. HOOKER
     7777 Glades Road
     Suite 300
     Boca Raton, Florida  33434
     561.206.6708
     lhooker@saxenawhite.com


FOR THE LIAISON COUNSEL FOR LEAD PLAINTIFF AND THE PROPOSED CLASS:
     COHEN MILSTEIN SELLERS & TOLL PLLC
     By:  MR. STEVEN J. TOLL
     MR. DANIEL S. SOMMERS
     1100 New York Avenue
     Suite 500
     Washington, D.C.  20005
     202.408.4600
     stoll@cohenmilstein.com
     dsommers@cohenmilstein.com


FOR THE DEFENDANTS:
     CRAVATH, SWAINE & MOORE LLP
     By:  MR. J. WESLEY EARNHARDT
     MR. DARIN P. MCATEE
     MR. DAVID H. KORN
     Worldwide Plaza
     825 Eighth Avenue
     New York, New York  10019
     212.474.1000
     wearnhardt@cravath.com
     dmcatee@cravath.com
     dkorn@cravath.com

3

<u>A P P E A R A N C E S</u> (Cont'd)


TROUTMAN PEPPER HAMILTON SANDERS LLP
By:  MR. DABNEY J. CARR
1001 Haxall Point
Richmond, Virginia  23219
804.697.1200
dabney.carr@troutman.com


OFFICIAL U.S. COURT REPORTER:
     MS. JULIE A. GOODWIN, CSR, RPR
     United States District Court
     401 Courthouse Square
     Eighth Floor
     Alexandria, Virginia  22314
     512.689.7587

4

(JULY 22, 2020, 11:04 A.M., *FTR GOLD*, VIA ZOOM.)

THE COURT:  All right.  We have everyone here who is meant to be here for the 16(b) conference in *Plymouth County Retirement System versus GTT Communications*.  I see a lot of faces on the screen and some other people who are choosing perhaps to remain in their pajamas.  I'm not sure.

Why don't we have counsel, who will be speaking, introduce themselves so that I can know with whom I will be having this discussion.

MS. GRANT:  Your Honor, this is Kyla Grant on behalf of Lead Plaintiffs Atlanta Police and Fire.

MR. HOOKER:  Your Honor, this is Lester Hooker, also on behalf of lead plaintiffs from Saxena White.

THE COURT:  Good morning, Mr. Hooker.

MR. HOOKER:  Good morning.

THE COURT:  Is there anyone else here on behalf of plaintiff's counsel, the plaintiff who will be speaking this morning?

MR. TOLL:  Your Honor, Steve Toll and Dan Sommers from Cohen Milstein Seller and Toll.  We're liaison counsel and don't plan on speaking.

THE COURT:  Good morning to you both.

And for the defense?

MR. EARNHARDT:  Good morning, Your Honor.  Wes Earnhardt from Cravath, Swaine & Moore.  I have with me Darin

McAtee from Cravath, Swaine & Moore and David Korn from Cravath, Swaine & Moore.  I -- I anticipate that Mr. Korn will do most of the speaking for us.  He's slated to handle any disputes on -- on scheduling.  But to the extent you have questions about the topics, I'm happy to handle those.

And then we have Dabney Carr from -- from Virginia as our local counsel, who is also on the phone.

THE COURT:  Good morning, Mr. Carr.

MR. CARR:  Good morning, Judge.

THE COURT:  Okay.  So, I take it we'll be hearing from Mr. Korn for the defense primarily and from Ms. Grant, is that correct, on behalf of the plaintiffs?

MS. GRANT:  That's correct, Your Honor.

THE COURT:  Okay.  Very good.  I'll just ask everyone -- I think everyone else is on moot, so you'll stay on moot.  I'll certainly give you-all a chance to speak if you -- if you wish to do so, but that way it will make it a little bit easier for us.

Okay.  So, I decided to do this by Zoom. Oftentimes with 16(b)s we don't need to have them at all.  I appreciate that you-all worked together on the 26(f) discovery plan, and it looks like it's a very limited area of disagreement.

I don't need to review all of the parts of the proposed joint plan that are not in dispute, unless there's

6

something that you believe we need to clarify.  I will adopt the proposed discovery plan, but I did think that the most efficient way to resolve the one difference that is highlighted there regarding whether there should be a date for substantial compliance would best be done through Zoom rather than on a conference call.  I find it difficult when I can't see people to know who is talking and when people begin and end, and so I thought at least being able to see each other's faces would be more efficient.

I think I understand the position of the parties. The plaintiffs would like a date of September 4th for substantial compliance in order to give them some degree of certainty that they have, if not all of the documents, then almost all of the documents they need prior to starting depositions.  And the defendants have opposed picking a date, any date, not a different date, but any date at all, and believe that simply having a rolling production is the most efficient way to conduct discovery and then do a -- depositions as the parties jointly agree up through the end of discovery, which is set for November 13th.

Have I correctly summarized the position of the parties, Ms. Grant?

MS. GRANT:  Yes, with one difference, Your Honor. Plaintiffs actually proposed a substantial completion date of August 28, 20 --

Julie A. Goodwin, CSR, RPR

7.22.2020

THE COURT: Oh, that's right. I recall.

MS. GRANT: And then we had previously proposed September 4th and then retracted it. However, there's not much difference between those two dates, but that's the date we proposed.

THE COURT: Thank you.

And Mr. Korn, is that -- have I correctly summarized the defendant's position?

MR. KORN: Your Honor, you (unintelligible). You have summarized our position correctly.

THE COURT: Yeah.

Well, you know, this is a bit of a challenging problem. I understand in cases like this that there are a lot of documents and that it requires a lot of effort on the part of the defendants to identify the correct custodians, collect those documents, review them, and turn them over under the pressures of the Eastern District of Virginia's rocket docket. And that that is a challenge in any class action case like this, and that it is also to some degree asymmetrical because the plaintiffs simply do not have as many documents to produce in cases like this.

On the other hand, I also understand the plaintiffs' desire to have some understanding of when the documents will be fully produced so that they don't find themselves scheduling depositions and then discovering that

Julie A. Goodwin, CSR, RPR

7.22.2020

8

there are documents that are critical that they receive only a day or two before the deposition, or worse, two weeks after they've taken the deposition.  So, what is the best way to resolve that?

The best way to resolve that is through lawyers who are representing their clients zealously, but working in the collaborative fashion to permit both sides to adequately prepare and review the facts in the case in order to get to the end of discovery and then figure out what's going to happen in this matter.

So, I can set a substantial compliance date and then, Ms. Grant, the plaintiffs will be in the unfortunate position of not knowing whether the defendants will simply wait until August 28th to dump a large number of documents on their plate, as opposed to providing them in a timely basis, now at the end of July or the beginning of August.  That's one -- one way which I've seen these cases litigated.

The other is to not have a date set for the plaintiffs and then see what you've got as you get to the end of August and then litigate, if you believe that they have been slow rolling or dragging the production of documents so that it makes it difficult to schedule depositions.  You know, either way you'll be coming back to the Court, and it's simply a matter of who's filing the motion to compel or who's complaining that they need more time because they haven't been

given an adequate amount of time to do this.

Do the parties really want me to resolve this right now or do you think there's a better way to do it?

Mr. Korn?  Ms. Grant?

MR. KORN:  No, I agree with the date you've set out. I think that is the -- the most prudent course, and I can maybe just add a little bit of flavor to what you've said, which is that the parties this morning were able to agree on our final custodian list, so we are working collaboratively.  I think we're working productively.

It's (unintelligible) to walk you through all the different steps of the discovery process you're going to need to -- to go through, but I think you are -- your summary is a -- proposal would -- would capture exactly what we would intend to do and what we think is appropriate.

THE COURT:  Ms. Grant?

MS. GRANT:  Your Honor, I -- I think we're open to that approach.  We did agree, plaintiffs had originally proposed 25 custodians.  We reduced that to 15.  Defendants have yet to object to our search terms, which we tried to make reasonable from the outset, so we're certainly hopeful the defendants are able to timely produce documents and that we have a good portion of the documents by August 28th.  And for that reason I think we're open to a see what happens approach.

We would just say that if that date does approach

and we don't have the documents we need from defendants, unfortunately, you probably will be seeing us again.

THE COURT:  Well, I'm of course happy to see you-all, but to the extent that you can work out your differences collaboratively, I'd prefer that you make that effort.  And in fact, that effort is required through the meet and confer process.

I'm glad to hear that you've identified custodians, and it doesn't sound like that's an area of dispute.  The area of search terms obviously can also be an area of dispute, and if it's not resolved promptly will delay the production of documents.

Again, these are things that lawyers bring to court to resolve when they cannot find a way to adequately communicate and work out a solution that is acceptable to both sides.  I'm not inclined to -- to include a substantial compliance date at this point.  But, I will -- I will say quite plainly that if the defendants are not making real efforts to agree on search terms, run those search terms and begin a production that does not hold back the documents the plaintiffs are looking for, then I will be more than happy to resolve that on a motion to compel if it appears by the end of August that the plaintiffs feel like they do not have the documents they need to start setting these depositions.

And I'm not suggesting the defendants will do

11

anything other than work collaboratively and professionally, so I will be happy to be, you know, left in peace and not have to resolve things through a motion to compel.

You know, what I don't want to see is the parties in late August or the beginning of September coming to me saying, There's been no real communication; we've gotten no real documents and now we want to have the same conversation that we just had here on July 22nd because we couldn't work it out.

So, you know, this is a Court that will expect everybody to do their job within the time period that's set out. And although it is not as long as you would get in many other places, you know, my understanding is that plaintiffs propounded their discovery on July 1st. So, you know, at other times with other judges you might have the Court say simply, Well, you have 30 days to produce all the documents, and on August 1st they have to be produced.

Now, I know that's not realistic. The plaintiffs know that's not realistic. But remember, the alternatives here can be far more draconian than a substantial compliance date being set by the Court.

MR. KORN: Your Honor, if I may, just one quick point.

Ms. Grant referenced search terms, and she -- she accurately described her negotiation from the date of proposed time, we have not offered any substantive objections to date.

Julie A. Goodwin, CSR, RPR

7.22.2020

12

And one of the reasons for that is their claim to use the Technology Assisted Review, or the TAR process. So (unintelligible) search term that's beyond would be running this TAR computer model. And that process -- I'm not sure how familiar Your Honor is with that. It takes a number of weeks in order to train the model and (unintelligible) the model. And we've agreed with the plaintiff on the (unintelligible) approach.

One of our main concerns with the potential completion date was we're not sure whether we can finish that TAR process by the end of the August time frame that Ms. Grant has referred to, but we do feel it is far and away the more efficient way to conduct discovery in this case. So we fully plan to be collaborative and communicate with the plaintiffs about how that process is going, how the selection process, TAR process are proceeding. But we do just want to flag for you, I don't envision the search terms to be a point of significant disagreement because we are operating under this TAR model.

THE COURT: Very good. Thank you for educating me on that. And I would hope that that will help, you know, make the process more efficient, and I understand that it may take some time to -- for the algorithms to become perfected, so to speak.

The only other thing that I would highlight, unless there's something else we need to discuss with regard to this

Julie A. Goodwin, CSR, RPR

7.22.2020

13

issue, and I'll give you the opportunity to weigh in, Ms. Grant, is to make sure that we have an efficient and appropriate way of dealing with privilege materials.

I see that on page 9 of the joint proposed discovery plan that you've addressed a process for privilege logs, I guess, setting out a date ten days after production of documents. I assume that would be on a rolling basis so that if there's something withheld that you're aware of it would be ten days from the date that would otherwise have to be turned over.

I do not want, as I have seen in other cases, for there to be disputes towards the end of discovery in which there are hundreds or thousands of documents on privilege logs where those issues have not been fully discussed between counsel with an effort to try and resolve, narrow, and eliminate them before they are brought to court. There's nothing more challenging for the Court than dealing with privilege logs with thousands of entries on them.

And again, I'm not suggesting that will be the case here, but I am highlighting it as something that I want the parties to be discussing and to be mindful of so that we don't end up with a discussion so late in the game that it becomes difficult to resolve.

Is there anything, Ms. Grant, that you wish to address with regard to either of those two issues?

MS. GRANT:  No, Your Honor.  The parties negotiated that ten-day rolling deadline, which I think we're generally comfortable with.

With respect to Mr. Korn's explanation of the TAR process, we'll be in communication with defendants about that. I think my only concern is if that ends up delaying any production for weeks and weeks on end, so I -- but I anticipate the defendants intend to be making rolling productions on a timely basis.

THE COURT:  And Mr. Korn, I did not understand you to say that the use of the TAR process would preclude turning over documents in coming days and coming weeks, but it was an additional process of reviewing and searching for documents in addition to running keyword searches, and that you do intend to make rolling production prior to the end of August.  Is that correct?

MR. KORN:  A couple of points, Your Honor.

We do intend to make production (unintelligible) the protective order as entered a set of board materials, insurance agreements the plaintiffs have requested, and analyst reports, which is already immediately really upon entry of the protective order.  I wanted to flag the TAR process because that is the way we will be searching for e-mail documents, and that process does require several weeks on the front end to train.  And so that's why the rolling production

Julie A. Goodwin, CSR, RPR

7.22.2020

15

(unintelligible) are to get over that first speed bump.  But once they do, we will start to roll production.

And --

THE COURT:  Tell me what several weeks is.  Several weeks could mean two or it could mean six.

MR. KORN:  It -- it -- more on the three to potentially longer depending on the volume of documents that we receive from the client, fencing off delays that we may -- may encounter.  I would say three weeks at the best-case scenario for this training of TAR, and so we're looking in the middle of August to the end of August to complete the TAR process.

THE COURT:  Well, I've got to say that the process that you described, which of course I don't pretend to fully understand, is one in which I would think that the challenges that we all face with remote working would not impact at all.  In other words, computer database analysis can be done by the dozens or hundreds of attorneys and paralegals and others, IT professionals remotely from their homes or from wherever they are working.  And so I do not view the challenges that we face with the pandemic to be any impediment to doing this work.  It is simply a matter of devoting appropriate resources and manpower to doing it.

You know, if it turns out that this is a five or six-week period before the defendants are getting any meaningful discovery, and of course the board minutes and

16

insurance contracts are really not what they're looking for. They're important; they should be turned over. There's no reason not to turn them over immediately, but it is, of course, the documents related to the specific allegations in the complaint that they need to have in order to determine who to depose and what questions to ask.

If they're really -- there's a lack of capacity or manpower in getting this TAR process moving and producing documents and it's going to take until the end of August, I must say the Court is not going to be satisfied with that. If it takes until the middle of August to begin substantially producing documents related to e-mails and personal correspondence, that's a different matter.

And I understand. I'm not asking you to answer that question right now. I am giving you guidance as to if we are back here what the Court is expecting the defendants to make every effort to accomplish. I'm familiar with the resources that the defendants have available to them, and if it means simply having more people working on this and more IT staff devoted to it upfront in order to be reviewing the specific documents for privilege or relevance or otherwise, well, that needs to be done right now, not in the final week of August.

MR. KORN: Thank you, Your Honor, for that -- that guidance. Completely understand your -- your position and

17

where you're coming from.

I do want to clarify.  It's not as much of a manpower issue.  The -- the process that we're going to use circumvents all of the manpower concerns where you would throw a team of documents, the attorney's got a problem, and the more attorneys you throw at it the faster you can get it done, or allows you to move much faster than that process that allow you to.  But it's the computer process that has that initial lag time, and there's not much additional resources or additional effort we can put in that's going to speed up that initial training of the computer system.  It's -- that's what takes time to churn through the volume of potentially millions of documents that we're collecting here.

So, we are absolutely going to devote all the resources that we can to the process.  On the back end of that, there's been the privilege review that ultimately takes place, and so there's -- it's not the matter of as soon as the TAR spits out the code then, you know, (unintelligible) there's additional steps on top of that.  I -- but I can assure Your Honor that we're devoting all of the resources that we need and really get a (unintelligible) result that's faster than what we would do if it were just a pure man --

THE COURT:  I will -- I will take you at your word and your representation that you will make every effort to comply and do so in the fastest way possible.  The burden will be on

18

the plaintiffs to communicate with you to make sure, as I'm sure they do, they understand the system that you are using, and to the extent that after good faith negotiations they feel that you are not adequately doing that within the time frame that allows them to be prepared to take depositions starting in September, then -- you know, again, I'm not encouraging or suggesting that anyone needs to come back to court, but I will deal with that promptly. And I now have a baseline of knowledge with which to judge whether or not those efforts have been adequate.

Is there anything else on the part of the defendants or the plaintiffs that you believe that we should discuss with regard to the adoption of the 26(f) report or the 16(b) order that I will enter? I will otherwise adopt it and issue our standard 16(b) order in this case.

Nothing?

MR. KORN: No, Your Honor.

MS. GRANT: Nothing for Your Honor, unless one of my colleagues thinks there is something. But otherwise, no.

THE COURT: Okay. I'll open the floor very briefly. No other comments? Very good.

MR. TOLL: None from the plaintiff.

THE COURT: Thank you.

Okay. Well, I've -- I will issue an order promptly, and I hope that you can work your issues out. But if

19

not, as you know, we have an efficient way of doing this.  If we need to have oral argument, we can do it by Zoom.

I do not anticipate any circumstance in which we'll be bringing lawyers in on non-dispositive motions given the current state of the pandemic throughout the country and even here in Virginia.  But we have found that it's very efficient to resolve things and give people a chance to be heard through Zoom, and we'll do so if that's -- that comes to pass.

Otherwise, I hope you-all stay healthy, and court will be in recess.

Thank you.

VOICES:  Thank you, Your Honor.

THE COURT:  Thank you.

(PROCEEDINGS CONCLUDED AT 11:27 A.M.)

-oOo-

20

UNITED STATES DISTRICT COURT     )

EASTERN DISTRICT OF VIRGINIA     )


            I, JULIE A. GOODWIN, Official Court Reporter for the United States District Court, Eastern District of Virginia, do hereby certify that the foregoing is a correct transcript from the recorded proceedings of *FTR Gold*, in the above matter, to the best of my ability.

            I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this proceeding was taken, and further that I am not financially nor otherwise interested in the outcome of the action.

            Certified to by me this 12TH day of AUGUST, 2020.


                        __*/s/*_____
                        JULIE A. GOODWIN, RPR
                        Official U.S. Court Reporter
                        401 Courthouse Square
                        Eighth Floor
                        Alexandria, Virginia  22314


Julie A. Goodwin, CSR, RPR

7.22.2020