UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| PLYMOUTH COUNTY RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br> v. <br><br> GTT COMMUNICATIONS, INC., RICHARD D. CALDER, JR., CHRIS MCKEE, MICHAEL SICOLI, and GINA NOMELLINI, <br><br> Defendants. | Case No. 1:19-cv-00982-CMH-MSN |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................... 1

II.     FACTUAL AND PROCEDURAL HISTORY OF THE ACTION .................................. 3

III.    THE TERMS OF THE SETTLEMENT ..................................................................... 7

IV.     THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............................... 7

        A.      Standards Governing Preliminary Approval of a Class Action Settlement ........... 7

        B.      The Proposed Settlement is Fair and Reasonable ................................................... 9

        C.      The Proposed Settlement is Adequate ................................................................. 12

        D.      Other Factors Supporting Preliminary Approval of the Settlement ..................... 15

V.      THE SETTLEMENT CLASS SHOULD BE CERTIFIED ........................................... 17

        A.      Numerosity – Rule 23(a)(1) ................................................................................. 18

        B.      Commonality – Rule 23(a)(2) .............................................................................. 18

        C.      Typicality – Rule 23(a)(3) ................................................................................... 19

        D.      Adequacy – Rule 23(a)(4) .................................................................................... 20

        E.      Predominance and Superiority – Rule 23(b)(3) ................................................... 22

VI.     THE PROPOSED NOTICE SHOULD BE APPROVED ............................................. 22

VII.    PROPOSED SETTLEMENT SCHEDULE .............................................................. 24

VIII.   CONCLUSION ................................................................................................... 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Brown v. Transurban USA, Inc.*,
  318 F.R.D. 560 (E.D. Va. 2016) ................................................................................... 10

*Deem v. Ames True Temper, Inc.*,
  2013 WL 2285972 (S.D.W. Va. May 23, 2013) ........................................................... 10

*Herrera v. Charlotte School of Law, LLC*,
  818. F. App'x 165 (4th Cir. 2020) .................................................................... 8, 9, 12

*Houston v. URS Corp.*,
  2009 WL 2474055 (E.D. Va. Aug. 7, 2009) ................................................................. 7

*In re BearingPoint, Inc. Sec. Litig.*,
  232 F.R.D. 534 (E.D. Va. 2006) ............................................................... 19, 20, 22

*In re Celebrex Antitrust Litig.*,
  2018 WL 2382091 (E.D. Va. Apr. 18, 2018) ............................................................. 17

*In re Computer Sci. Corp. Sec. Litig.*,
  288 F.R.D. 112 (E.D. Va. 2012) ........................................................................ 18, 20

*In re Equifax Inc. Customer Data Security Breach Litigation*,
  2020 WL 256132 (N.D. Ga. Mar. 17, 2020) .............................................................. 16

*In re Genworth Financial Sec. Litig.*,
  210 F. Supp. 3d 837 (E.D. Va. 2016) ............................................................... *passim*

*In re Jiffy Lube Sec. Litig.*,
  927 F.2d 155 (4th Cir. 1991) ..................................................................... 7, 9, 12

*In re Mills Corp. Sec. Litig.*,
  257 F.R.D. 101 (E.D. Va. 2009) ........................................................................ 18, 22

*In re NeuStar, Inc. Sec. Litig.*,
  2015 WL 5674798 (E.D. Va. Sept. 23, 2015) ................................................... *passim*

*In re NII Holdings, Inc. Sec. Litig.*,
  311 F.R.D. 401 (E.D. Va. 2015) ............................................................... 19, 20, 21

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2020 WL 4196468 (S.D.N.Y. July 21, 2020) ............................................................. 16

*In re Star Scientific, Inc. Sec. Litig.*,
   2015 WL 13821326 (E.D. Va. June 26, 2015) ...................................................... 17

*In re The Mills Corp. Sec. Litig.*,
   265 F.R.D. 246 (E.D. Va. 2009) ................................................................. *passim*

*Jeffreys v. Commc'ns Workers of Am., AFL-CIO*,
   212 F.R.D. 320 (E.D. Va. 2003) .......................................................... 19, 20, 21

*Plymouth County Retirement System v. Patterson Companies, Inc*,
   2020 WL 5757695 (D. Minn. Sept. 28, 2020) ...................................................... 12

*Robinson v. Carolina First Bank NA*,
   2019 WL 719031 (D.S.C. Feb 14, 2019) ......................................................... 7, 23

*Scott v. Clarke*,
   2016 WL 452164 (W.D. Va. Feb. 5, 2016) ............................................................ 14

*Shah v. Zimmer Biomet Holdings Inc*.,
   2020 WL 5627171 (N.D. Ind. Sept. 18, 2020) ...................................................... 11

*Skochin v. Genworth Financial, Inc.*,
   2020 WL 6532833 (E.D. Va. Nov. 5, 2020) ......................................................... 23

*Skochin v. Genworth Financial, Inc.*,
   2020 WL 6697418 (E.D. Va. Nov. 12, 2020) .......................................................... 9

*Winingear v. City of Norfolk, Va..*,
   2014 WL 3500996 (E.D. Va. July 14, 2014) ........................................................ 13

**STATUTES**

15 U.S.C. § 78u-4(a)(7) ........................................................................................ 23

**RULES**

Fed. R. Civ. P. 23 ...................................................................................... *passim*

**OTHER AUTHORITIES**

H.R. Conf. Rep. No. 104-369 (1995) .................................................................. 21

Lead Plaintiff,[1] by and through its undersigned counsel, hereby moves this Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an order: (i) preliminarily approving the proposed Settlement; (ii) certifying the proposed Settlement Class for settlement purposes; (iii) approving the form and manner of providing notice of the proposed Settlement to the Settlement Class; and (iv) scheduling a hearing to consider final approval of the Settlement and approval of the Plan of Allocation and Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses (the "Motion").  Pursuant to Local Civil Rule 7, Lead Counsel has conferred with Defendants' Counsel and Lead Plaintiff certifies that, as set forth in ¶3.2 of the Stipulation, Defendants do not oppose the Motion.

## I.    INTRODUCTION

After more than a year of hotly contested litigation conducted on an expedited schedule, Lead Plaintiff has resolved all claims against Defendants for the payment of $25 million on behalf of the proposed Settlement Class.  This is an extraordinary recovery, as it secures for Settlement Class Members between 7.6% and 31% of their likely recoverable damages—up to **_eight_** times the typical securities class action recovery, which between 2010 and 2018 was just 3.9% for similarly-sized settlements.  Moreover, the Settlement is a particularly excellent result when considering the numerous risks and uncertainties posed by continued litigation, including significant issues that GTT has recently disclosed concerning its reporting of financial results and internal controls during the Settlement Class Period.  As a result of those issues, GTT has not filed its quarterly filings with the SEC since March 31, 2020 and GTT's stock price is

---

[1] Lead Plaintiff is City of Atlanta Police Pension Fund and City of Atlanta Firefighters' Pension Fund ("Atlanta P&F", "Lead Plaintiff" or "Plaintiff").  Unless otherwise indicated, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement, dated December 14, 2020 (the "Stipulation") filed herewith; all citations to "¶" and "Ex." refer, respectively, to paragraphs in, and exhibits to, the Stipulation unless otherwise noted; all citations and internal quotations are omitted; and all emphasis is added.

1

currently trading between $3 and $5, with a market capitalization hovering in the mid-$200 million range.  In light of these considerations and the fact that the remaining proceeds of Defendants' Directors' and Officers' insurance tower were rapidly wasting, the Settlement represents an exceptional recovery for the Class.

To achieve this result, Plaintiff and Lead Counsel engaged in extensive litigation efforts, including, among other things: (i) conducting a thorough investigation of the claims, including interviewing at least fifteen confidential witnesses who provided Plaintiff with significant information concerning its claims; (ii) filing a detailed Amended Complaint; (iii) successfully opposing Defendants' motion to dismiss the Amended Complaint; (iv) consulting with various testifying and non-testifying experts; (v) briefing Plaintiff's motion for class certification, including submitting an expert report demonstrating market efficiency; (vi) engaging in comprehensive fact and expert discovery efforts on an expedited basis, including reviewing hundreds of thousands of pages of documents produced by Defendants and preparing for eleven fact and expert witness depositions; (vii) submitting a thorough and detailed report by Lead Plaintiff's expert opining on loss causation and damages; (viii) filing a detailed Second Amended Complaint incorporating additional accounting fraud claims; (ix) submitting a detailed mediation statement setting forth Plaintiff's positions on highly disputed issues in the case; and (x) providing extensive presentations on such issues during two formal, full-day mediation sessions before two of the most prominent securities class action mediators.

Lead Plaintiff and Lead Counsel have thus vigorously prosecuted this Action from its inception through resolution.  Based upon their experience, their evaluation of the facts and the applicable law, and their recognition of the substantial Settlement Amount, particularly given GTT's current precarious financial position, Lead Plaintiff and Lead Counsel respectfully submit

2

that the proposed Settlement is fair, reasonable and adequate, and is in the best interests of the proposed Settlement Class.  This is especially true when weighed against the strong arguments and defenses asserted by Defendants on the pivotal issues of falsity, loss causation and damages, and the considerable risk and expense of further protracted litigation, all of which could have led the Settlement Class to recover substantially less—or nothing—if the Action were litigated through class certification, summary judgment motions, trial, and the inevitable appeals.

Accordingly, Plaintiff now seeks the Court's preliminary approval of the proposed Settlement, which requires only a "basic showing that the proposed settlement is within the range of possible approval." *In re NeuStar, Inc. Sec. Litig.*, 2015 WL 5674798, at *10 (E.D. Va. Sept. 23, 2015).  As discussed below, the Settlement satisfies each of the factors relevant on a motion for preliminary approval.  Therefore, Plaintiff respectfully requests that the Court enter the proposed Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order") submitted herewith, which will, among other things:

    (i) preliminarily approve the Settlement pursuant to the Stipulation;

    (ii) certify the proposed Settlement Class for settlement purposes;

    (iii) approve the form and content of the Notice and Summary Notice attached as Exhibits A-1 and A-3 to the proposed Preliminary Approval Order;

    (iv) find that the proposed procedures for distribution of the Notice and publication of the Summary Notice constitute the best notice practicable under the circumstances, and comply with due process, Rule 23 of the Federal Rules of Civil Procedure, and the PSLRA; and

    (v) set a schedule and procedures for: (1) disseminating the Notice and publishing the Summary Notice; (2) requesting exclusion from the Settlement Class; (3) objecting to the Settlement, the Plan of Allocation, and/or Lead Counsel's application for attorneys' fees and reimbursement of Litigation Expenses; (4) submitting papers in support of final approval of the Settlement; and (5) the Settlement Hearing.

## II.  FACTUAL AND PROCEDURAL HISTORY OF THE ACTION

On July 30, 2019, the initial complaint in this Action was filed.  ECF No. 1. On January

7, 2020, the Court appointed Atlanta P&F as Lead Plaintiff, Saxena White P.A. ("Saxena White") as Lead Counsel, and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Liaison Counsel. ECF No. 35.   On February 28, 2020, Lead Plaintiff filed its Amended Complaint (ECF No. 42), which alleged that Defendants violated the federal securities laws by making materially false and misleading statements and omissions regarding GTT's acquisition and integration of Interoute Communications S.A. ("Interoute").   Thereafter, the Parties fully briefed Defendants' motion to dismiss the Amended Complaint (ECF Nos. 46, 50, 52) and, on June 22, 2020, the Court denied Defendants' motion in its entirety.  ECF No. 53.

On June 26, 2020, this Court entered an Order setting a pretrial conference before Magistrate Judge Michael S. Nachmanoff for July 22, 2020, while directing the Parties to confer on a discovery plan that would provide for the close of all fact and expert discovery on or before November 13, 2020, and set the final pretrial conference for November 19, 2020. ECF No. 54.

Thereafter, the Parties engaged in extensive discovery. Among other things, Plaintiff issued and responded to numerous document requests, responded to interrogatories, obtained and reviewed over 412,000 pages of documents produced by Defendants, produced 9,000 pages of documents to Defendants, served a third party with a document subpoena, and preliminarily noticed the depositions of eight fact witnesses while preparing to defend three fact and expert depositions noticed by Defendants.   During this extensive discovery, the Parties exchanged approximately fifteen letters concerning their document productions, and engaged in numerous meet and confer conferences to discuss significant and highly disputed discovery-related issues. With respect to expert discovery, Lead Plaintiff submitted the expert report of Mr. Chad Coffman, CFA who opined on loss causation and damages.

On August 7, 2020, Plaintiff filed its motion for class certification accompanied by the expert report of Chad Coffman, CFA opining on market efficiency. ECF Nos. 65, 67-1. Thereafter, Defendants' Counsel notified Lead Counsel that Defendants would not oppose Plaintiff's motion. Thus, on September 4, 2020, the Parties filed a joint stipulation and proposed order requesting that the Court certify the Action as a class action and, on September 10, 2020, the Court granted the Parties' request. ECF Nos. 70, 71.

Meanwhile, during the course of this litigation, GTT publicly disclosed certain recent developments prompting Plaintiff to seek leave to file a second amended complaint (the "Second Amended Complaint," or "SAC," ECF No. 72-2), which became the operative complaint in this Action as of October 16, 2020. ECF No. 78. Specifically, on August 10, 2020, GTT filed Form 8-Ks with the SEC disclosing that the Company had uncovered certain issues with its reporting of financial results and potentially the effectiveness of its internal controls; that it had commenced an internal audit review regarding these issues; and that it would be unable to timely file its Form 10-Q for the second quarter of 2020. On August 19, 2020, GTT filed a Form 8-K stating that it had received a notice from the New York Stock Exchange ("NYSE") advising the Company that it may be delisted if it did not file the 10-Q by February 17, 2021.

Then, on September 15, 2020, GTT filed another Form 8-K with the SEC disclosing that the accounting review had "identified a number of issues in connection with the Company's previously issued financial statements," including issues that impacted the financial statements the Company issued during the Settlement Class Period, and that it was "reassessing its previous conclusions regarding the effectiveness of its internal control over financial reporting" during the "years ended December 31, 2019, 2018 and 2017, each of the quarters during the years ended

December 31, 2019, 2018 and 2017, and the quarter ended March 31, 2020," and expected "to identify material weaknesses in the Company's internal control over financial reporting."

In light of these developments, Plaintiff determined it would seek leave to further amend the Amended Complaint to include allegations of additional false and misleading statements by Defendants concerning the effectiveness of GTT's internal controls and the accuracy and completeness of the quarterly and annual financial results reported by the Company during the Settlement Class Period.

During this time, the Parties also agreed to mediate before two of the nation's preeminent mediators of complex civil disputes: the Honorable Daniel Weinstein (Ret.), a highly accomplished former State of California Judge, a founder of JAMS and an acclaimed and widely-respected mediator; and Mr. Jed Melnick, also a highly accomplished mediator who is the Managing Mediator for the Weinstein Melnick Team.  To that end, the Parties participated in two, full-day mediation sessions on October 8, 2020 and November 6, 2020.  In advance of the first mediation held on October 8, 2020, the Parties submitted substantial materials in support of their respective positions.  In connection with this mediation, Plaintiff also notified Defendants of its intention to move for leave to file the Second Amended Complaint and provided Defendants with a copy of the proposed SAC.  After a full day of presentations by the Parties and discussions with the mediators, the mediation concluded without a resolution of the Action.

Thereafter, Defendants notified Lead Plaintiff that they would consent to Plaintiff's filing of the SAC, but planned to move to dismiss the SAC. As a result, the Parties agreed that, pursuant to the PSLRA, all remaining discovery should be stayed and all upcoming deadlines pursuant to the case schedule should be taken off calendar pending resolution of Defendants' forthcoming motion to dismiss the SAC.  To that end, on October 12, 2020, the Parties filed a

Joint Motion for leave to file the SAC and to amend the case schedule, along with a copy of the proposed SAC. ECF Nos. 72, 72-1, 72-2.  On October 16, 2020, the Court granted the Parties' Joint Motion, thereby staying all further discovery, vacating the case schedule, permitting the SAC to become the operative complaint in this Action, and setting a briefing schedule for Defendants' motion to dismiss the SAC. ECF No. 78.  The Parties attended a second, full-day mediation session on November 6, 2020. At the conclusion of the November session, the Parties agreed to settle the Action for a cash payment of $25 million.  The Parties thereafter promptly agreed upon the terms of the proposed Settlement as set forth in the Stipulation.

## III.    THE TERMS OF THE SETTLEMENT

The proposed Settlement, which would resolve this Action in its entirety, provides that Defendants will pay or cause to be paid twenty-five million dollars ($25,000,000.00) into an Escrow Account for the benefit of the Settlement Class.  The full terms and conditions of the Settlement are set forth in the Stipulation.

## IV.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.    Standards Governing Preliminary Approval of a Class Action Settlement

Courts in the Fourth Circuit have long recognized a strong public policy and presumption favoring settlements.  *E.g., Robinson v. Carolina First Bank NA*, 2019 WL 719031, at *8 (D.S.C. Feb. 14, 2019) ("There is a strong judicial policy in favor of settlement to conserve scarce resources that would otherwise be devoted to protracted litigation." (citing *In re Jiffy Lube Sec. Litig.,* 927 F.2d 155, 158-59 (4th Cir. 1991)))*.  Moreover, "as this District has recognized, there is a strong initial presumption that the compromise is fair and reasonable."  *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 258 (E.D. Va. 2009); *see also Houston v. URS Corp.*, 2009 WL 2474055, at *4 (E.D. Va. Aug. 7, 2009) ("[settlement] approval by a district court promotes the policy of encouraging settlement of litigation").

7

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, resolution of a federal class action via settlement occurs in two stages.  First, district courts perform a preliminary review to determine whether a settlement class should be certified for settlement purposes, and if notice of the proposed settlement should be sent to the settlement class.  Effective December 1, 2018, Rule 23(e)(1) was amended to, among other things, specify that the crux of a court's preliminary review is whether notice should be provided given the likelihood that the court will be able to finally approve the settlement and certify a settlement class.  As courts in this District explain, this preliminary review requires only a "basic showing" that the proposed settlement "is within the range of possible approval," during which "the court considers whether there is probable cause to submit the proposal to members of the class and to hold a full-scale hearing on its fairness." *NeuStar*, 2015 WL 5674798, at *10.  For the reasons stated below, including in Section D *infra*, the $25 million Settlement Amount is well within the range of reasonableness to warrant preliminary approval of the Settlement and the issuance of notice to the Settlement Class; thus, the Court should preliminarily approve the Settlement.

Second, after notice is provided and a settlement hearing held, pursuant to Rule 23(e)(2) district courts next determine whether to approve the settlement as "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).[2] In this Circuit, determining the fairness and adequacy of a settlement at the final approval stage requires a two-step assessment of "both the procedural

---

[2] Specifically, "Federal Rule of Civil Procedure 23(e)(2) has been amended and now sets forth factors for the district court to assess in evaluating fairness, reasonableness, and adequacy," *Herrera v. Charlotte School of Law, LLC*, 818. F. App'x 165, 176, n.4 (4th Cir. 2020), including whether: (a) Plaintiff and Lead Counsel adequately represented the Settlement Class; (b) the Settlement was negotiated at arm's-length; (c) the relief provided to the Settlement Class is adequate; and (d) the proposal treats Settlement Class Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2).  According to Fourth Circuit precedent, however, "this Court continues to apply its own standards as they almost completely overlap with the new Rule 23(e)(2) factors, rendering the analysis the same." *Herrera*, 818 F. App'x at 176, n.4.

fairness of the settlement negotiations and the substantive adequacy of the settlement itself." *NeuStar*, 2015 WL 5674798, at *9. "Before a court conducts its final fairness hearing, it may apply the same principles [during its preliminary review]." *Id.* at *10. As summarized below, and as will be detailed further in a motion for final approval of the Settlement, all factors are met.

### B. The Proposed Settlement is Fair and Reasonable

In the Fourth Circuit, the fairness of a proposed settlement is determined by application of the four factors set forth in *In re Jiffy Lube Securities Litigation*, 927 F.2d 155 (4th Cir. 1991) ("*Jiffy Lube*"), which are: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of law." *In re Genworth Financial Sec. Litig.*, 210 F. Supp. 3d 837, 839-40 (E.D. Va. 2016) (citing *Jiffy Lube*, 927 F.2d at 159). These factors largely overlap with the factors provided by Rule 23(e). *See, e.g., Skochin v. Genworth Financial, Inc.*, 2020 WL 6697418, at *2 (E.D. Va. Nov. 12, 2020) ("In the Fourth Circuit, the Rule 23(e)(2) analysis has been condensed into the two-step *Jiffy Lube* test which examines the fairness and adequacy of the settlement.").

Under the first and second *Jiffy Lube* factors, the Court evaluates "essentially how far the case has come from its inception," and favors settlements "in cases in which discovery has been substantial and several briefs have been filed and argued." *In re The Mills Corporation Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009). Each of these factors is easily satisfied here, particularly considering that the Parties determined to settle this Action only after extensive discovery had taken place, and the Class had been certified. *See, e.g., NeuStar*, 2015 WL 5674798, at *10 ("The Fourth Circuit has held that a reasonable judgment of the possible merits

of the case is best achieved when all discovery has been completed and the case is ready for trial.").

Indeed, prior to agreeing in principle to settle this Action, (i) the Parties had fully briefed Defendants' motion to dismiss the Amended Complaint; (ii) Plaintiff had moved for class certification, including submitting an opening expert report evidencing market efficiency, and negotiated a stipulation providing for class certification; (iii) Plaintiff had prepared and filed a detailed Second Amended Complaint reflecting recent disclosures by GTT; and (iv) the Parties were on the eve of commencing briefing on Defendants' anticipated motion to dismiss the SAC. In addition, Plaintiff had issued and responded to numerous, voluminous discovery requests and produced, examined, and reviewed over seventy thousand documents spanning more than 420,000 pages in just three months; exchanged detailed privilege logs; and noticed and began preparations to take and defend a concentrated slate of eleven fact and expert witness depositions.  Additionally, Plaintiff submitted a substantive expert report opining on loss causation and damages.  Thus, the litigation had progressed materially and rapidly from its inception, and the merits of the Parties' claims and defenses had been thoroughly vetted through the discovery process, demonstrating the fairness of the proposed Settlement.  *See e.g., Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 572 (E.D. Va. 2016) (finding "a rigorous investigation of the claims before filing the Complaint and Amended Complaint" sufficient to show fairness of proposed settlement); *Deem v. Ames True Temper, Inc.*, 2013 WL 2285972, at *2 (S.D.W. Va. May 23, 2013) (finding "adequate discovery and investigation had occurred to enable the parties to reach a fair settlement" where "[a]t the time the parties reached this settlement, they were on the eve of trial and had completed discovery"); *NeuStar*, 2015 WL 5674798, at *10 (where, as here, plaintiff had "conducted market efficiency and loss causation analysis, and received

10

detailed damages analysis from an expert," the parties "sufficiently understood the nature of their positions" rendering the settlement fair).

The third *Jiffy Lube* factor "requires an examination of the negotiating process by which the settlement was reached in order to ensure that the compromise is the result of arms'-length negotiations necessary to effective representation of the class's interests." *Mills*, 265 F.R.D. at 255. Here, the Parties engaged in vigorous negotiations over the course of two full days of mediation conducted by experienced and renowned mediators Judge Weinstein and Mr. Melnick. *See, e.g., Shah v. Zimmer Biomet Holdings Inc*., 2020 WL 5627171, at *6 (N.D. Ind. Sept. 18, 2020) (hailing Judge Weinstein (Ret.) and Mr. Melnick as "two of the leading mediators in this field"). Moreover, after the October 8th mediation session, the Parties remained in dialog with the mediators by telephone and email, and the Parties were able to reach an agreement in principle to settle this Action upon conclusion of the second mediation session on November 6th. Such "continuing efforts before an experienced mediator [] demonstrate that the Settlement is fair and reasonable." *Genworth*, 210 F. Supp. 3d at 840-41; *see also Mills*, 265 F.R.D. at 255 (negotiations before Judge Weinstein made it "apparent to the Court that this settlement was not entered into haphazardly with an underdeveloped understanding of the merits of the case").

The fourth *Jiffy Lube* factor weighs the experience of counsel in the particular field of law. "Indeed, this District has recognized that when Class Counsel are nationally recognized members of the securities litigation bar, it is entirely warranted for this Court to pay heed to their judgment in approving, negotiating, and entering into a putative settlement." *Mills*, 265 F.R.D. at 255. Here, Lead Counsel is highly experienced and well-respected in the field of securities class action litigation and has an extensive track record in numerous large cash recoveries on behalf of classes they have represented. *E.g.,* ECF No. 67, Ex. B (Saxena White firm resume);

11

*see also Plymouth County Retirement System v. Patterson Companies, Inc*, 2020 WL 5757695, at *8 (D. Minn. Sept. 28, 2020) (finding Saxena White to be highly qualified counsel with extensive experience in the field of securities class action litigation, and to have demonstrated diligence and expertise before the court). Additionally, Cravath, Swaine & Moore LLP is one of the most preeminent and sophisticated defense firms in the nation. Where, as here, Lead Counsel is a "national firm[] with deep experience in securities litigation," and "have secured large cash recoveries for clients in the past," the proposed Settlement should be deemed fair and reasonable and preliminary approval granted. *Genworth*, 210 F. Supp. 3d at 841.

Accordingly, an analysis of each of the *Jiffy Lube* factors shows that the proposed Settlement meets the fairness requirements of this Circuit and of Rule 23(e).

### C.    The Proposed Settlement is Adequate

In determining whether a proposed settlement is adequate, district courts in this Circuit should consider:

> (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant[] and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement.

*Herrera v. Charlotte School of Law, LLC*, 818. F. App'x 165, 177 (4th Cir. 2020) (citing *Jiffy Lube*, 927 F.2d at 159); *see also* Fed. R. Civ. P. 23(e)(2).

In applying these adequacy factors, the Court should examine "how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult case." *Mills*, 265 F.R.D. at 256. An analysis of the relative strengths of Lead Plaintiff's case on the merits and the existence of any difficulties of proof or

strong defenses it would be likely to encounter if the Action were to proceed through trial clearly shows that the proposed Settlement is adequate.

Lead Plaintiff believes that its claims have significant merit.  Indeed, Plaintiff strongly believed that it would succeed in establishing Defendants' violations of the federal securities laws at trial, and that the Class suffered damages as a result of Defendants' alleged fraud. However, Lead Plaintiff recognized that securities cases are "notably difficult and notoriously uncertain," particularly "in cases like the present, where elements such as scienter, materiality of misrepresentation and reliance by the class members often present significant barriers to recovery in securities fraud litigation."  *Mills*, 265 F.R.D. at 255-56.  Here, there is no question that continued litigation would have been protracted, costly and undertaken with significant risk, particularly in light of the risk that sources of settlement funding would be depleted.

*First*, Defendants have continuously and vehemently denied all of Plaintiff's allegations. Indeed, Defendants presented strong and credible arguments as to falsity, materiality, and loss causation in their motion to dismiss the Amended Complaint and were on the eve of filing another motion to dismiss the SAC at the time a settlement in principle was reached.  Moreover, Lead Plaintiff and Lead Counsel would have to surmount challenges at summary judgment, trial, and likely on appeal, each an opportunity to defeat Plaintiff's case.  This Court, previously, has found this factor weighed in favor of approval where, as here, "it is clear that the parties would incur a large amount of further expenses had they not reached this settlement agreement." *Winingear v. City of Norfolk, Va..*, 2014 WL 3500996, at *5 (E.D. Va. July 14, 2014) (granting preliminary approval of settlement, among other reasons, because "trial in this matter would be complex" and the parties likely "would have pursued various post-trial motions and appeals" (citing *Mills*, 265 F.R.D. at 256)).

13

*Second*, the anticipated duration and expense of this additional litigation would run up significant litigation costs, drastically reducing the proceeds remaining in Defendants' wasting D&O insurance tower.  Indeed, continued prosecution of this Action would have required a full briefing of Defendants' anticipated motion to dismiss the SAC, followed by continued extensive fact and expert discovery.  Further, taking into account the costs of briefing summary judgment and conducting a trial, the expenditures would become even more substantial, to the point of potentially exhausting any and all funds available to Defendants to settle this case.  *See Scott v. Clarke*, 2016 WL 452164, at *13, n.7 (W.D. Va. Feb. 5, 2016) ("Plaintiffs understandably abided by the aphorism that a bird in the hand is worth two in the bush" by settling and foregoing "the opportunity for some marginally-increased, costly, and uncertain relief in exchange for a substantial, guaranteed, and immediate quarry").

*Third*, the Settlement amount represents an extraordinary result on behalf of the Settlement Class.  Indeed, the $25 million cash recovery represents between 7.6% and 31% of the Settlement Class's likely recoverable damages, which Plaintiffs' expert calculated could range between $80 million and $329 million.  Accordingly, the Settlement represents a recovery that is up to ***eight*** times the typical securities class action recovery, which between 2010 and 2018 was just 3.9% for similarly-sized settlements.[3]

Furthermore, Lead Plaintiff recognizes the risk posed by GTT's current financial condition. As detailed in the Second Amended Complaint and the Company's recent SEC filings, GTT has disclosed, among other things, that (i) it is undertaking a review of accounting and internal control issues; (ii) the Company has not filed recent Quarterly Reports on Form 10-Q;

---

[3] *See* Cornerstone Research, *Securities Class Action Filings: 2019 Year in Review*, 6 (Jan. 29, 2020), https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2019-Review-and-Analysis.

and (iii) GTT has been informed by the NYSE that GTT's stock may be delisted if it cannot comply with its reporting requirements by February 2021.  Furthermore, GTT's stock price is currently trading between $3 and $5, with a market capitalization hovering in the mid-$200 million range. In light of these considerations and the fact that the remaining proceeds of Defendants' Directors' and Officers' insurance tower were rapidly wasting, the Settlement represents an exceptional recovery for the Class.  *See Mills*, 265 F.R.D. at 257 (settlement adequate when "the full recovery from [defendant company's] assets was less than a certainty" given "economic woes"); *Genworth*, 210 F. Supp. 3d at 842 (given defendant company's precipitous share price decline, credit downgrades, and billions of dollars of debt, the settlement "protects the plaintiffs from non-recovery in the chance of a large jury verdict rendering [the company] insolvent").

Accordingly, Lead Plaintiff, and Lead Counsel respectfully submit that the proposed Settlement is fair, reasonable, and adequate and Plaintiff's Motion for preliminary approval should be granted in all respects.

### D.    Other Factors Supporting Preliminary Approval of the Settlement

Rule 23(e)(2) also instructs federal district courts to consider whether "the relief provided for the class is adequate, taking into account," among other things, "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" "the terms of any proposed award of attorneys' fees, including timing of payment;" and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  Each of these factors also supports preliminary approval here.

*First*, the proposed Settlement is adequate because it provides a proposed Plan of Allocation—which was developed in consultation with Plaintiff's damages expert and treats all

Settlement Class Members equitably—containing a fair and reasonable method for distributing the proceeds of the Net Settlement Fund to Authorized Claimants on a *pro rata* basis based upon their recognized claim compared to the total recognized claims of all Authorized Claimants.  *See* ¶4.3; Ex. A-1.   Furthermore, Plaintiff's proposed Plan of Allocation "accounts for when claimants purchased their securities and for how long they held the stock, considerations that have been approved by courts in this district."   *Genworth*, 210 F. Supp. 3d at 843 (approving plan of allocation based on these same considerations, collecting cases).

Additionally, the proposed Settlement provides well-established, effective procedures for processing the claims of the Settlement Class and seeks to appoint JND Legal Administration ("JND"), a longstanding and well-respected claims administrator, as the Claims Administrator for the Settlement.[4]  As set forth in the Stipulation, JND will process the claims of the Settlement Class under Lead Counsel's guidance, allow claimants an opportunity to cure any deficiencies in their claims or ask the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court-approval. *See* ¶¶4.1-4.14.  This method of claims processing is standard in securities class settlements and has long been found to be effective. *See, e.g., In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020) (finding the same

---

[4] Lead Plaintiff hereby requests that the Court approve retention of JND, an experienced claims administrator, as the Claims Administrator for the Settlement. *See e.g. In Re Equifax Inc. Customer Data Security Breach Litigation,* 2020 WL 256132 at *8 (N.D. Ga. Mar. 17, 2020) (finding "JND is highly experienced in administering large class action settlements and judgments," and "has the capacity to handle class member inquiries and claims of this magnitude"). Moreover, JND is currently acting as claims administrator in several notable securities class action settlements, including, for example, *In re Signet Jewelers Limited Securities Litigation* 1:16cv06728-CM-SDA (S.D.N.Y.) ($240 million settlement); and *In re Snap Inc. Securities Litigation* 2:17-cv-03679-SVW-AGR (C.D. Ca.) ($185 million settlement).

claims processing methods to be "well-established, effective methods that have been widely used in securities class-action litigation" and appointing JND as the claims administrator).

*Second*, as disclosed in the Notice, Lead Counsel and Liaison Counsel will be applying for a percentage of the common fund in an amount not to exceed 33⅓% to compensate them for the services they rendered on behalf of the Settlement Class.  Here, a proposed attorneys' fee of 33⅓% is adequate and reasonable in light of the extensive litigation efforts of Plaintiff's Counsel and the notable results obtained for the putative Settlement Class.  Importantly, this fee percentage is well within the range of percentage fees that are regularly awarded by courts in this District in connection with settlements of federal class actions, and particularly complex federal securities class actions such as this Action.  *See In re Celebrex Antitrust Litig.*, 2018 WL 2382091, at *5 (E.D. Va. Apr. 18, 2018) (awarded attorneys 33⅓% fee on $94 million settlement); *In re Star Scientific, Inc. Sec. Litig.*, 2015 WL 13821326, at *1 (E.D. Va. June 26, 2015) (approving a 33⅓% fee in a securities class action); *Cement Masons & Plasters Joint Pension Trust v TNS Inc., et al.*, No. 1:06-cv-00363-CMH-BRP (E.D. Va. June 20, 2009) (Hilton, J.) (approving a 30% fee award as "fair and reasonable under the percentage of recovery method" in a securities class action).

*Third*, the Parties have no side agreements other than a standard, confidential Supplemental Agreement, which provides that if the number of shares held by Settlement Class Members who opt out of the Settlement equals or exceeds a certain amount, GTT will have the option to terminate the Settlement. *See* ¶9.2.  Accordingly, consideration of these factors also shows that preliminary approval should be granted.

## V.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

In granting preliminary approval of the Settlement, Plaintiff hereby respectfully requests that the Court should also certify the Settlement Class for purposes of the Settlement under Rules

23(a) and (b)(3) of the Federal Rules of Civil Procedure.  The proposed Settlement Class, which

has been stipulated to by the Parties, consists of all persons or entities who purchased or

otherwise acquired publicly traded common stock of GTT from February 26, 2018 to August 7,

2019, inclusive, and who were damaged thereby.[5]  The definition of the Settlement Class is the

same as the definition of the class certified by the Court in its order dated September 10, 2020.

Plaintiff is only seeking certification of the Settlement Class because it filed the SAC with the

Court on October 12, 2020.

### A.      Numerosity – Rule 23(a)(1)

Rule 23(a)(1) requires the class to be "so numerous that joinder of all class members is

impracticable." Fed. R. Civ. P. 23(a)(1).  The "numerosity requirement is seldom disputed in

securities fraud cases." *In re Mills Corp. Sec. Litig.*, 257 F.R.D. 101, 104 (E.D. Va. 2009).  Here,

GTT shares traded on the NYSE, with between 44.5 million and 56.4 million shares outstanding

during the Settlement Class Period. *See*, ECF No. 67-A, ¶¶11, 66.  Under these circumstances,

federal courts routinely hold that there is "no doubt" that a class of shareholders of a NYSE-

traded company is "so numerous that the joinder of all members would be impracticable." *In re*

*Computer Sci. Corp. Sec. Litig.,* 288 F.R.D. 112, 117 (E.D. Va. 2012); *see also Mills*, 257 F.R.D.

at 105 (holding that defendant company with "millions of shares outstanding during the Class

Period" satisfied numerosity and certifying class).  Thus, numerosity is met.

### B.      Commonality – Rule 23(a)(2)

---

[5] Excluded from the Settlement Class are Defendants, the Officers and directors of GTT at all
relevant times, and all such excluded persons' Immediate Family members, legal representatives,
heirs, agents, affiliates, predecessors, successors and assigns, and any entity in which any
excluded person has or had a controlling interest.  Also excluded from the Settlement Class are
those persons who file valid and timely requests for exclusion in accordance with the Preliminary
Approval Order. *See* Preliminary Approval Order ¶1.44.

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality is satisfied where there is one question of law or fact common to the class and a class action will not be defeated solely because of some factual variances in individual grievances." *Jeffreys v. Commc'ns Workers of Am., AFL-CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003) (Hilton, J.). "The commonality requirement is permissively applied in the context of securities fraud litigation" because "[m]embers of a proposed class in a securities case are especially likely to share common claims and defenses." *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 539 (E.D. Va. 2006).

Here, numerous questions of law and fact are common among Plaintiff and the Settlement Class, including: (1) whether Defendants violated the federal securities laws; (2) whether Defendants misrepresented or omitted material facts; (3) whether Defendants acted with scienter; (4) whether the Individual Defendants controlled GTT; (5) whether Defendants' misrepresentations and omissions caused Settlement Class Members to suffer a compensable loss; and (6) whether Settlement Class Members have sustained damages, and the proper measure of damages. These are the exact types of issues that regularly satisfy the commonality requirement in federal securities cases. *See, e.g.*, *In re NII Holdings, Inc. Sec. Litig.*, 311 F.R.D. 401, 406 (E.D. Va. 2015).

### C.    Typicality – Rule 23(a)(3)

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims and defenses of the class." Fed. R. Civ. P. 23(a)(3). The "commonality and typicality requirements of Rule 23(a) tend to merge" into one another as "[b]oth serve as guideposts for determining whether. . . the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in

their absence." *BearingPoint*, 232 F.R.D. at 538. "Factual variances . . . do[] not prohibit a finding of typicality as long as the claims are based on the same legal or remedial theory." *Jeffreys*, 212 F.R.D. at 322.

   As with commonality, here the typicality requirement is easily established as "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Computer Sci.*, 288 F.R.D. at 117. Specifically, Lead Plaintiff's claims are typical of the claims of the proposed Settlement Class because they all arise from Defendants' false and misleading statements and omissions regarding the Interoute acquisition and integration as well as the effectiveness of GTT's internal control over financial reporting and the accuracy of the financial statements issued by the Company during the Settlement Class Period.  Moreover, like the other putative Settlement Class Members, Lead Plaintiff purchased or acquired GTT common stock during the Settlement Class Period at artificially inflated prices due to Defendants' materially false and misleading statements and was damaged when the truth of their fraud emerged.  Further, there are no unique defenses that threaten to become the focus of the litigation.  Thus, typicality is established here because "as goes the claim of the named plaintiff, so go the claims of the class." *NII Holdings*, 311 F.R.D. at 407; *see also BearingPoint*, 232 F.RD. at 539 (typicality satisfied where the plaintiff's claims "represent the essential claims of the proposed plaintiff class").

   **D.     Adequacy – Rule 23(a)(4)**

   The adequacy factor requires a finding that the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a)(4).  Plaintiff and Lead Counsel have adequately represented the Settlement Class during both the litigation of this Action and its resolution.  Furthermore, the interests of Lead Plaintiff and the other Settlement

Class Members are not antagonistic; rather, Plaintiff's interest in obtaining the largest-possible recovery in this Action is firmly aligned with all Settlement Class Members.  Indeed, as a public pension fund with experience serving in a leadership capacity in securities class actions, substantial assets under management and significant financial interests in the Action, Lead Plaintiff is precisely the type of institutional investor that Congress sought to ensure is given a leadership role in securities class actions when enacting the PSLRA. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733; *see also NII Holdings*, 311 F.R.D. at 407 (adequacy established when plaintiffs were "sizeable pension funds that have a strong incentive to seek the largest possible recovery on behalf of their beneficiaries").

Further, Lead Plaintiff has set forth a robust record demonstrating its adequacy by, among other things, actively seeking appointment as Lead Plaintiff, conducting an extensive and ongoing investigation of its claims, including filing the highly detailed Amended Complaint and Second Amended Complaint, defeating Defendants' motion to dismiss the Amended Complaint, actively pursuing fact and expert discovery and responding to Defendants' discovery requests, and participating in two mediation sessions.  *See, e.g., Jeffreys*, 212 F.R.D. at 323 (adequacy established where "class Plaintiffs accept and understand their responsibilities as class representatives and have displayed appropriate interest in both the litigation and the outcome").

Plaintiff also retained Lead Counsel and Liaison Counsel, each of which is highly experienced in litigating complex federal securities class actions, and has a long, successful track record of representing the interests of all investors in such cases.  *See, e.g.,* ECF No. 67, Exs. B & C.  Lead Counsel vigorously prosecuted the Settlement Class Members' claims and expended significant time and effort throughout the litigation.  *See, e.g.,* Sections II, IV B. *supra*.  Thus, the adequacy requirement is satisfied here.

### E.      Predominance and Superiority – Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members."   Fed. R. Civ. P. 23(b)(3). As the above analysis demonstrates, here there are numerous common questions of law and fact, including whether Defendants' statements were false or misleading, whether Defendants acted with scienter, and whether, and to what extent, Settlement Class Members suffered damages caused by the revelation of Defendants' fraud. Thus, the predominance requirement is easily satisfied here. *See, e.g. Mills*, 257 F.R.D. at 109 (finding case involved predominant common issues, as securities fraud class actions "typically meet the Rule 23(b)(3) because the claims related to acts or omissions of the same defendants and damages individual class members might be too small to provide incentive for the individuals to sue").

Further, "class actions are a particularly appropriate and desirable means to resolve claims based on alleged violations of the securities laws."   *BearingPoint*, 232 F.R.D. at 545 (finding superiority requirement met, among other reasons, because "[a]ny interest individual members of the class may have in controlling the litigation is far outweighed by the benefit of distributing the financial burden of the litigation among the class").   As a result, certifying this Action as a class action for settlement purposes also is superior to other available methods for litigating and resolving the Settlement Class Members' claims.

Accordingly, for these reasons, among others, Plaintiff's request to certify the Settlement Class for settlement purposes also should be granted in all respects.

## VI.    THE PROPOSED NOTICE SHOULD BE APPROVED

Under Federal Rule of Civil Procedure 23(e), "notice must be sent to potential class members describing the terms of the proposed settlement, class members must be given an

opportunity to object or to opt out of the settlement, and the court then must conduct a fairness hearing at which class members may appear and support or object to the settlement." *Skochin v. Genworth Financial, Inc.*, 2020 WL 6532833, *9 (E.D. Va. Nov. 5, 2020) (approving similar form of notice) (citing Fed. R. Civ. P. 23(e)(1)).   As set forth in the proposed Preliminary Approval Order, Lead Counsel will notify Settlement Class Members of the pendency of the Action and the proposed Settlement by causing the Notice and Claim Form to be mailed to all Settlement Class Members who can be identified with reasonable effort.

Here, the proposed Notice advises Settlement Class Members of: (i) the pendency of the Action as a class action; (ii) the essential terms of the Settlement; (iii) the proposed Plan of Allocation; and (iv) information regarding the motion for attorneys' fees and reimbursement of Litigation Expenses.  The proposed Notice also provides specifics on the date, time and place of the Final Approval Hearing and sets forth the procedures, and deadlines, for opting out of the Settlement Class, for objecting to the Settlement, the proposed Plan of Allocation and/or the motion for attorneys' fees and reimbursement of Litigation Expenses, and for submitting a Claim Form.  The Notice and Claim Form will also be available on the Settlement website established by the Claims Administrator.  *See Robinson*, 2019 WL 719031, at *13 (approving proposed notice under similar circumstances).   Finally, the proposed Preliminary Approval Order also requires the Summary Notice to be published in *Investor's Business Daily* and to be transmitted over *PR Newswire*.   Thus, the form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7).  *See NeuStar*, 2015 WL 5674798, at *12-13 (finding that mailing of notice to all potential class members identified using defendant company's electronic transfer records, publishing a detailed summary notice in *Investor's Business Daily* and transmitting summary notice over *PR Business*

23

*Newswire* were adequate in both method and content).

## VII.   PROPOSED SETTLEMENT SCHEDULE

The Parties respectfully propose the following schedule for the Court's consideration,

which is set forth in the proposed Preliminary Approval Order:

| | |
|---|---|
| Deadline for mailing the Notice to Settlement Class Members and posting the Notice and Claim Form on the Settlement website (the "Notice Date") (*see* ¶7(b)) | Up to 20 business days after entry of the Preliminary Approval Order |
| Deadline to publish the Summary Notice (*see* ¶7(d)) | Up to 10 business days after the Notice Date |
| Deadline for Plaintiff to file papers in support of final approval and application for fees and expenses (*see* ¶28) | 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests or objections (*see* ¶15) | 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers (*see* ¶28) | 7 calendar days prior to the Settlement Hearing |
| Deadline for submitting proof of the mailing of the Notice to Settlement Class Members and publication of the Summary Notice (*see* ¶7(e)) | 7 calendar days prior to the date of the Settlement Hearing |
| Settlement Hearing (for the Court's convenience, the Parties have proposed April 23, 2021 as the date of the Settlement Hearing, *see* ¶77) | At least 100 calendar days after the filing of this Motion, or at the Court's earliest convenience thereafter |
| Deadline for submitting Claim Forms (*see* ¶12) | Postmarked no later than 100 calendar days after the Notice Date |

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant preliminary

approval of the Settlement and enter the accompanying Preliminary Approval Order.

Dated: December 14, 2020                         Respectfully submitted,

                                        */s/ Steven J. Toll*
                                        Steven J. Toll

                                        **COHEN MILSTEIN SELLERS & TOLL
                                        PLLC**
                                        Steven J. Toll (Va. Bar No. 15300)
                                        Daniel S. Sommers (*pro hac vice*)

1100 New York Avenue, Suite 500
Washington, DC 20005
Telephone:  (202) 408-4600
 stoll@cohenmilstein.com
dsommers@cohenmilstein.com

*Liaison Counsel for Lead Plaintiff and the*
*proposed Settlement Class*

**SAXENA WHITE P.A.**
Maya Saxena
Joseph E. White, III
Lester R. Hooker
Dianne M. Pitre
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com
dpitre@saxenawhite.com

-and-

Steven B. Singer
Kyla Grant
Sara DiLeo
10 Bank Street, 8th Floor
White Plains, New York 10606
Telephone: (914) 437-8551
Facsimile: (888) 631-3611
ssinger@saxenawhite.com
kgrant@saxenawhite.com
sdileo@saxenawhite.com

*Lead Counsel for Lead Plaintiff and the*
*proposed Settlement Class*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on December 14, 2020, I caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all of the registered participants.

*/s/ Steven J. Toll*
Steven J. Toll
