# **<u>EXHIBIT 1</u>**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| PLYMOUTH COUNTY RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:19-cv-00982-CMH-MSN |
| Plaintiff, | |
| v. | |
| GTT COMMUNICATIONS, INC., RICHARD D. CALDER, JR., CHRIS MCKEE, MICHAEL SICOLI, and GINA NOMELLINI, | |
| Defendants. | |

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement dated as of December 14, 2020 (the "Stipulation") is made pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.  Subject to the approval of the United States District Court for the Eastern District of Virginia (the "Court"), this Stipulation is entered into by and among the following parties to the above-captioned action (the "Action") by and through their counsel of record in the Action:  (a)  City of Atlanta Police Pension Fund and City of Atlanta Firefighters' Pension Fund (together, "Lead Plaintiff" or "Plaintiff"), on behalf of themselves and the other members of the Settlement Class (defined below); and (b) (i) defendant  GTT Communications, Inc. ("GTT" or the "Company") and (ii) defendants Richard D. Calder, Jr., Chris McKee, Michael Sicoli, and Gina Nomellini (the "Individual Defendants") (collectively with GTT, the "Defendants" and, together with Lead Plaintiff, the "Parties").   This Stipulation is intended to fully, finally, and forever compromise, settle, release, resolve, and dismiss with prejudice all claims asserted in the Action against the Defendant Releasees as set forth below.

I.      **THE ACTION**

   1.      **Overview of Plaintiff's Claims**

The original securities class action complaint in the Action was filed in this District by Plymouth County Retirement System on July 30, 2019, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.  ECF No. 1.  On January 7, 2020, the Court appointed City of Atlanta Police Pension Fund and City of Atlanta Firefighter's Pension Fund as Lead Plaintiff, pursuant to the requirements of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and approved Lead Plaintiff's selection of Saxena White P.A. ("Saxena White") as Lead Counsel and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Liaison Counsel.  ECF No. 35.  On

February 28, 2020, Lead Plaintiff filed its Amended Class Action Complaint for Violations of the Federal Securities Laws and Jury Trial Demand (the "Amended Complaint," ECF No. 42).

The Amended Complaint alleged, among other things, that throughout the Settlement Class Period (as defined below), Defendants made numerous false and misleading statements regarding GTT's $2.3 billion acquisition and integration of Interoute Communications Holdings S.A. ("Interoute"), a European telecommunications company that was by far the largest and most important acquisition in GTT's history. Specifically, the Amended Complaint alleged that Defendants represented that GTT's self-proclaimed well-tested and "seamless" acquisition and integration strategy—purportedly designed to ensure that GTT only "bought businesses that are strategic and that are doing exactly what we do," i.e., "providing cloud networking"—would work just as effectively with respect to Interoute because Interoute's business was virtually identical to GTT's.  The Amended Complaint alleged that, once the integration was underway, Defendants also repeatedly reassured investors that the integration was progressing right "on track" and that GTT was timely meeting every pre-announced milestone, including that the "key" "cut over" of all of Interoute's legacy billing and sales systems onto GTT's proprietary Client Management Database (or "CMD") was implemented in October 2018 and "effectively complete" by December 2018, with only a "little bit of cleanup activity" remaining.

The Amended Complaint further alleged that unbeknownst to investors, Defendants' representations were false, and that the accounts of 15 former high-level employees of both GTT and Interoute (the "CWs"), as well as Defendants' own admissions at the end of the Settlement Class Period, confirmed that Defendants knew full well throughout the Settlement Class Period that before the time of the acquisition, Interoute had implemented a "strategic priority shift" to selling cloud services—a focus that Defendants admitted was an entirely "different business"

2

than GTT's business of selling cloud networking connectivity.   Moreover, the Amended Complaint alleged that the CWs stated that the integration was an "absolute nightmare" and a "disaster" from day one, that Defendants' representations to the contrary were "not at all" true and "not what was happening," and that the integration was so deficient that Interoute was not fully integrated even by the end of the Settlement Class Period.

The Amended Complaint stated that the truth regarding Defendants' fraud began to emerge on May 8, 2019, when GTT announced its first revenue decline in four years, which Defendants directly attributed to "delays related to [Interoute] integration activities."   The Amended Complaint alleged that Defendants admitted that the "critically important" cut over from Interoute's legacy systems to GTT's CMD was not "effectively complete" in December 2018 as previously represented, but in fact this "key" milestone had been delayed by several months.  Furthermore, the Amended Complaint alleged that Defendants also admitted that, rather than fitting "hand in glove" with GTT, Interoute had made a "strategic priority shift" years before the acquisition to selling cloud services—a shift that Defendants admitted they did not maintain post-acquisition and which they directly tied to GTT's revenue decline and loss in "sales momentum."   The Amended Complaint alleged that analysts noted that these disclosures were "disappointing given the optimistic comments made by management over the past three quarters," and in response to these revelations, GTT's stock price plummeted more than 25%, from $40.29 to $29.91.

Finally, the Amended Complaint asserted that while Defendants downplayed these revelations and falsely assured investors that the integration issues were now "behind us," the full truth regarding Defendants' fraud was not revealed until the next quarter on August 8, 2019, when GTT announced another unexpected decline in revenue that Defendants again directly

attributed to Interoute "integration challenges," particularly with respect to the CMD cut-over. The Amended Complaint alleged that, according to analysts, Defendants "should have been more forthcoming about the anticipated impact from such issues on [near term] results." The Amended Complaint alleged that, on this news, GTT's stock price collapsed, falling 46% from $11.35 per share on August 7, 2019 to close at just $6.09 per share on August 8, 2019.

On October 12, 2020, Plaintiff filed a Second Amended Class Action Complaint (the "Second Amended Complaint" or "SAC"), which became the operative complaint in this Action as of October 16, 2020.  ECF Nos. 72-2, 78.  The SAC alleged the same claims of federal securities fraud on behalf of the same Class against the same Defendants based on their same conduct during the same Class Period as alleged in the Amended Complaint.  The SAC also contained new factual allegations, including additional allegedly false and misleading statements made by Defendants, concerning certain issues with GTT's reporting of financial results and statements regarding the effectiveness of its internal controls during the Settlement Class Period, with reference to Form 8-Ks that GTT filed with the SEC on August 10, 2020 and September 15, 2020.  The SAC alleged that the Company had engaged in an accounting fraud to, among other things, mask the negative impact of the Interoute integration.  Specifically, the SAC alleged that senior officers orchestrated a variety of accounting manipulations, including adjustments to expenses without adequate support.  The SAC's new accounting-related allegations are discussed in more detail below.

### 2.     The Pleading Stage for the Amended Complaint

On April 17, 2020, Defendants moved to dismiss Lead Plaintiff's Amended Complaint. ECF No. 46.  Lead Plaintiff filed its opposition on May 22, 2020, and on June 5, 2020,

Defendants filed their reply.  ECF Nos. 50, 52.   On June 22, 2020, the Court entered an Order denying Defendants' motion to dismiss the Amended Complaint.  ECF No. 53.

### 3.     Fact and Expert Discovery

Discovery commenced immediately after the Court's denial of Defendants' motion to dismiss.  On June 26, 2020, District Judge Claude M. Hilton entered an Order setting a pretrial conference before Magistrate Judge Michael S. Nachmanoff for July 22, 2020, while directing the Parties to confer on a discovery plan that would provide for the close of all fact and expert discovery on or before November 13, 2020, and set the final pretrial conference for November 19, 2020. ECF 54. Thereafter, the Parties submitted a case schedule in compliance with Judge Hilton's Order, and participated in the pretrial conference before Magistrate Judge Nachmanoff on July 22, 2020, after which Magistrate Judge Nachmanoff entered the Parties' proposed case schedule on July 22, 2020. ECF Nos. 55, 60.

Lead Plaintiff sought discovery from GTT, each of the Individual Defendants, and a third-party valuation expert called CBIZ Inc.  Defendants sought discovery from Lead Plaintiff; Lead Plaintiff's expert on market efficiency, damages and loss causation; and Lead Plaintiff's third-party investment advisors, LMCG Investments, LLC ("LMCG"), Consequent Capital Management, and Marquette Associates.  Additionally, Defendants noticed 30(b)(6) depositions of Lead Plaintiff and LMCG, as well as a deposition of Plaintiff's market efficiency, damages and loss causation expert; and Plaintiff preliminarily noticed the depositions of eight fact witnesses.

Lead Plaintiff served their First Set of Requests for Production of Documents to All Defendants on July 1, 2020.  Defendants served their responses and objections to Lead Plaintiff's first set of document requests on July 16, 2020.  Defendants served their First Set of Requests for

the Production of Documents and Electronically Stored Information and their First Set of Interrogatories on Plaintiff on July 1, 2020, and Plaintiff served its responses and objections to those discovery requests on Defendants on July 16, 2020, and served Defendants with a supplemental interrogatory response on August 19, 2020.   Defendants served document subpoenas on Plaintiff's investment advisors on July 24, 2020 and Plaintiff served responses and objections to these subpoenas on August 7, 2020.

Plaintiff served its Second Set of Requests for Production of Documents to All Defendants on July 27, 2020 and Defendants served their responses and objections to Lead Plaintiff's second document requests on August 12, 2020.   Plaintiff served its Third Set of Requests for Production of Documents to All Defendants on September 15, 2020, and Defendants served their responses and objections to Plaintiff's third set of requests on September 30, 2020.   Plaintiff served its document subpoena on CBIZ on September 16, 2020, and CBIZ served responses and objections on September 30, 2020.   Plaintiff served its Fourth Set of Requests for Production of Documents to All Defendants on October 13, 2020, but Defendants' service of their responses and objections to this discovery request subsequently were held in abeyance.   The Parties also exchanged privilege logs.

During the course of negotiating the appropriate scope of this extensive discovery, the Parties exchanged approximately 15 letters concerning their document productions, and engaged in numerous meet and confer conferences, during which the Parties conferred about significant and disputed discovery-related issues.   After the Parties agreed on an appropriate set of search terms, custodians and various other discovery parameters, Defendants collected, reviewed and produced on behalf of themselves, and Lead Plaintiff reviewed, approximately 71,858 documents spanning 412,938 pages in eight separate productions over the course of over three months, with

Defendants providing Lead Plaintiff with their first production on July 28, 2020, substantially completing their document productions by September 19, 2020, and making their last production on October 13, 2020. The Parties also reviewed the approximately 654 documents spanning 1,906 pages produced by LMCG.  Finally, Lead Plaintiff collected, reviewed and produced, and Defendants reviewed, approximately 569 documents spanning 9,271 pages on behalf of Plaintiff and its market efficiency, damages and loss causation expert.

With respect to expert discovery, Lead Plaintiff submitted the expert report of Mr. Chad Coffman, CFA on September 25, 2020, which opined on loss causation and damages.

### 4.    **Class Certification**

While discovery was underway, on August 7, 2020, Lead Plaintiff filed its Motion for Class Certification, Appointment of Class Representative and Appointment of Class Counsel. ECF No. 65.  In this motion, Lead Plaintiff requested that the Court certify this Action as a class action, appoint Lead Plaintiff as Class Representative appoint Saxena White as Lead Class Counsel, and appoint Cohen Milstein as Liaison Class Counsel.  In connection with this motion, Lead Plaintiff also submitted the export report of Chad Coffman, CFA (ECF No. 67-1) as evidence of market efficiency.

On September 3, 2020, Defendants notified Class Counsel that they would not oppose Plaintiff's motion for class certification.  Thus, on September 4, 2020, the Parties filed a joint stipulation and proposed order requesting that the Court certify this Action, as alleged in the Amended Complaint, and appoint Plaintiff as Class Representative, Saxena White as Class Counsel and Cohen Milstein as Liaison Class Counsel.  ECF No. 70.  On September 10, 2020, the Court granted the Parties' joint stipulation and proposed order, and certified this Action as a class action on behalf of all persons or entities who purchased or otherwise acquired publicly

traded common stock of GTT from February 26, 2018 to August 7, 2019, inclusive, and who were damaged thereby (the "Certified Class"), among other things. ECF No. 71.

### 5.    Subsequent Events Underlying the Second Amended Complaint

During the course of litigating this Action, GTT made additional filings with the SEC that Lead Plaintiff relied upon as the basis for new allegations in Plaintiff's Second Amended Complaint. Specifically, GTT was due to file its Form 10-Q for the quarter ending June 30, 2020 on August 10, 2020. Instead, GTT filed a notification of a late filing in a Form 12b-25 on that date stating that "the Company identified certain issues related to the recording and reporting of Cost of Telecommunications services and related internal controls." GTT also stated that its management and the Audit Committee of its Board of Directors, with assistance from outside counsel and consultants, were conducting a review of these accounting issues and were assessing the effect on GTT's financial statements both in the second quarter of 2020 and for previous quarters, as well as whether there were any other material weaknesses in the Company's internal controls.

On August 19, 2020, GTT filed a Form 8-K stating that it had received a notice from the New York Stock Exchange ("NYSE") advising the Company that it was "not in compliance with the NYSE's continued listing requirements" due to its failure to timely file the Form 10-Q; that GTT would be delisted if it did not file the 10-Q by February 17, 2021; and that the NYSE could commence delisting proceedings earlier "if circumstances warrant."

On September 15, 2020, GTT filed another Form 8-K with the SEC, which provided additional information about the accounting and internal control issues. Specifically, in the Form 8-K, GTT stated that the accounting review had "identified a number of issues in connection with the Company's previously issued financial statements," including issues that impacted the

financial statements the Company issued during the Settlement Class Period (defined below). For example, the Company stated that its ongoing internal investigation had determined that, in 2019 and the first quarter of 2020, the Company had made "adjustments ... without adequate support to Cost of Telecommunications Services" that had "the effect of removing expenses from the Company's income statement at quarter-end and then recognizing certain of those expenses in subsequent quarters." The Company also stated that, during the years ended December 31, 2017 and 2018, GTT failed "to recognize certain expenses on the Company's income statement by recording such expenses to goodwill and thereby attributing such expenses to pre-acquisition accruals, without adequate support, for companies that had been acquired." The Form 8-K also stated that GTT was "reassessing its previous conclusions regarding the effectiveness of its internal control over financial reporting" during the "years ended December 31, 2019, 2018 and 2017, each of the quarters during the years ended December 31, 2019, 2018 and 2017, and the quarter ended March 31, 2020," and that the Company expects "to identify material weaknesses in the Company's internal control over financial reporting." In the same Form 8-K, the Company also stated that GTT and Daniel M. Fraser had mutually agreed to terminate Mr. Fraser's employment as Senior Vice President and Corporate Controller of the Company. Mr. Fraser was also the Company's principal accounting officer.

In light of these recent developments, Plaintiff determined it would seek leave to further amend the Amended Complaint to include allegations of additional false and misleading statements by Defendants concerning the effectiveness of GTT's internal controls and the accuracy and completeness of the quarterly and annual financial results reported by the Company during the Settlement Class Period.

### 6.      First Mediation and the Second Amended Complaint

On October 8, 2020, the Parties held their first remote, one-day mediation session before the Honorable Daniel Weinstein (Ret.) and Mr. Jed Melnick, both of whom are renowned mediators affiliated with JAMS.  In advance of this mediation session, the Parties submitted substantial materials in support of their respective positions.  After a full day of presentations by the Parties and discussions with the mediators, the mediation concluded without a resolution of the Action.

In connection with this mediation, Lead Plaintiff also notified Defendants of its intention to move for leave to file the Second Amended Complaint and provided Defendants with a copy of the proposed SAC.  Thereafter, Defendants notified Lead Plaintiff that they would consent to Plaintiff's filing of the SAC, but planned to move to dismiss the SAC.  As a result, the Parties agreed that, pursuant to the PSLRA, all remaining discovery should be stayed and all upcoming deadlines pursuant to the case schedule should be taken off calendar pending resolution of Defendants' forthcoming motion to dismiss the SAC.

To that end, on October 12, 2020, the Parties filed a Joint Motion for Leave to File a Second Amended Complaint and Amend Case Schedule along with a Proposed Order and Second Amended Complaint. ECF Nos. 72, 72-1, 72-2.  On October 16, 2020, the Court granted the Parties' Joint Motion, thereby staying all further discovery, vacating the case schedule, permitting the SAC to become the operative complaint in this Action, and setting a briefing schedule for Defendants' motion to dismiss the SAC. ECF No. 78.

### 7.      The Second Mediation Session

After the October 8 mediation session, the Parties remained in dialogue with the mediators by telephone and email about a potential resolution of the Action.  On November 6,

2020, the Parties participated in a second remote, full-day mediation session before the Honorable Daniel Weinstein (Ret.) and Mr. Jed Melnick, during which the Parties agreed in principle to settle this Action for $25 million, subject to execution of this Stipulation and to Court approval of the proposed Settlement.

## II.   CLAIMS OF LEAD PLAINTIFF AND BENEFIT OF THE SETTLEMENT

Lead Plaintiff and Lead Counsel have determined that the terms set forth in this Stipulation are fair, reasonable, adequate, and in the best interests of the Settlement Class. Based upon their investigation and prosecution of the case, Lead Plaintiff and Lead Counsel believe that the claims asserted in the Action have merit and that the evidence developed in discovery further supports those claims. The Stipulation shall not be construed as or received in evidence as an admission, concession or presumption against Lead Plaintiff or any of the Settlement Class Members that any of their claims are without merit, that any defenses asserted by Defendants have merit, or that the damages recoverable in the Action would not have exceeded the Settlement Fund (as defined herein). However, Lead Plaintiff recognizes and acknowledges the additional expense and risks posed by the continued litigation of the Action against Defendants through trial and appeals, particularly considering GTT's distressed financial condition and the issues that GTT recently disclosed regarding the Company's internal controls and financial statements during the Settlement Class Period. Lead Plaintiff has also taken into account the uncertain outcome and risk of any litigation, especially in complex actions such as this Action, as well as the difficulties and delays of such litigation. Lead Plaintiff is also mindful of the inherent difficulties of proof associated with, and possible defenses to, the securities law violations asserted in the Action. Lead Plaintiff believes that the terms set forth in this Stipulation confer substantial benefits upon the Settlement Class.

### III.   DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Throughout this Action, Defendants have denied, and continue to deny, any and all allegations of fault, liability, wrongdoing, or damages whatsoever arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action. Defendants have denied, and continue to deny, the allegations that Lead Plaintiff or any Settlement Class Member has suffered damages or was harmed by any of the conduct alleged in the Action or that could have been alleged as part of the Action.   In addition, Defendants maintain that they have meritorious defenses to all claims in the Action.   Defendants continue to believe the claims asserted against them in the Action are without merit and have agreed to enter into the Settlement set forth in this Stipulation solely to avoid the expense, distraction, time and uncertainty associated with the Action.

Defendants have concluded that it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation.   Defendants also have taken into account the risks inherent in any litigation, especially in complex cases such as this Action.   Defendants have therefore determined that it is desirable and beneficial to them that the Action be settled in the manner and upon the terms and conditions set forth in this Stipulation.

### IV.   SETTLEMENT TERMS

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Lead Plaintiff (individually and on behalf of all other members of the Settlement Class) and Defendants, by and through their respective undersigned attorneys and subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that, in consideration of the benefits flowing to the Parties from the Settlement, all Released Plaintiff's Claims as against

the Defendant Releasees and all Released Defendants' Claims as against the Plaintiff Releasees shall be settled and released, and the Action shall be dismissed with prejudice, upon and subject to the terms and conditions set forth below.

**1.      Definitions**

As used in this Stipulation, the following terms have the meanings specified below:

1.1      "Action" means the securities class action styled *Plymouth County Retirement System v. GTT Communications, Inc. et al.,* 1:19-cv-00982-CMH-MSN (E.D. Va.).

1.2      "Alternate Judgment" means a form of final judgment in a form other than the form of Judgment provided for in this Stipulation that may be approved of in writing by all the Parties acting by and through their respective counsel of record in the Action and entered by the Court.

1.3      "Authorized Claimant" means a Settlement Class Member who submits a Proof of Claim Form to the Claims Administrator that is approved by the Court for payment from the Net Settlement Fund.

1.4      "Claim" means a Proof of Claim Form submitted to the Claims Administrator.

1.5      "Claim Form" or "Proof of Claim Form" means the form attached hereto as Exhibit A-2, or in such other form as may be approved in writing by all of the Parties acting by and through their respective counsel of record in the Action and approved by the Court, that a Claimant or Settlement Class Member must complete and submit should that Claimant or Settlement Class Member seek to share in a distribution of the Net Settlement Fund.

1.6      "Claimant" means a person or entity who or which submits a Claim Form to the Claims Administrator seeking to be eligible to share in the proceeds of the Settlement Fund.

1.7    "Claims Administrator" means the firm retained by Lead Plaintiff and Lead Counsel, subject to approval of the Court, to provide all notices approved by the Court to potential Settlement Class Members and to administer the Settlement.

1.8    "Class Distribution Order" means an order entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to Authorized Claimants.

1.9    "Court" means the United States District Court for the Eastern District of Virginia.

1.10    "GTT" or "the Company" means GTT Communications, Inc.

1.11    "Defendants" means GTT and the Individual Defendants.

1.12    "Defendants' Counsel" means the law firms of Cravath, Swaine & Moore LLP and Troutman Pepper Hamilton Sanders LLP.

1.13    "Defendant Releasees" means each and all Defendants, Defendants' Counsel, and their respective Related Persons.

1.14    "Effective Date" means the first date by which all of the conditions specified in Paragraph 8.1 below have been met and have occurred or have been waived.

1.15    "Escrow Account" means an account maintained at The Huntington National Bank, wherein the Settlement Amount shall be deposited and held in escrow under the control of Lead Counsel.

1.16    "Escrow Agent" means The Huntington National Bank.

1.17    "Escrow Agreement" means the agreement between Lead Counsel and the Escrow Agent setting forth the terms under which the Escrow Agent shall maintain the Escrow Account.

14

1.18    "Final," with respect to the Judgment, or any other court order, means: (i) if no appeal is filed, the expiration date of the time provided for filing or noticing any appeal under the Federal Rules of Appellate Procedure, i.e., thirty (30) days after entry of the judgment or order; or (ii) if there is an appeal from the judgment or order, (a) the date of final dismissal of all such appeals, or the final dismissal of any proceeding on certiorari or otherwise, or (b) the date the judgment or order is finally affirmed on an appeal, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review, and, if certiorari or other form of review is granted, the date of final affirmance following review pursuant to that grant.   However, any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to (i) attorneys' fees, costs or expenses; (ii) the plan of allocation of Settlement proceeds (as submitted or subsequently modified); or (iii) the procedures for determining Authorized Claimants' recognized claims, or distribution of the Net Settlement Fund to Authorized Claimants, shall not in any way delay or affect the time set forth above for the Judgment to become Final, or otherwise preclude a judgment from becoming Final.

1.19    "Immediate Family" means children, stepchildren, parents, stepparents, spouses, siblings, mothers-in-law, fathers-in-law, sons-in-law, daughters-in-law, brothers-in-law, and sisters-in-law.   As used in this paragraph, "spouse" shall mean a husband, a wife, or a partner in a state-recognized domestic relationship or civil union.

1.20    "Individual Defendants" means Richard D. Calder, Jr., Chris McKee, Michael Sicoli, and Gina Nomellini.

1.21    "Judgment" means the judgment to be rendered by the Court in the form of Exhibit B attached hereto, or the Alternate Judgment.

1.22    "Lead Counsel" means Saxena White P.A.

1.23    "Lead Plaintiff" means City of Atlanta Police Pension Fund and City of Atlanta Firefighters' Pension Fund.

1.24    "Liaison Counsel" means Cohen Milstein Sellers & Toll PLLC.

1.25    "Litigation Expenses" means costs and expenses incurred in connection with commencing, prosecuting and settling the Action (which may include the reimbursement, pursuant to the PSLRA, of time, costs and expenses of Lead Plaintiff directly related to their representation of the Settlement Class), for which Lead Counsel intend to apply to the Court for reimbursement from the Settlement Fund.

1.26    "Net Settlement Fund" means the Settlement Fund less: (i) any Taxes and Tax Expenses; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the Court; (iv) any attorneys' fees awarded by the Court; and (v) other Court-approved deductions.

1.27    "Notice" means the Notice of (i) Proposed Settlement and Plan of Allocation; (ii) Settlement Fairness Hearing; and (iii) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, in the form attached hereto as Exhibit A-1, or in such other form as may be approved in writing by all of the Parties acting by and through their respective counsel of record in the Action and approved by the Court, which is to be mailed to Settlement Class Members.

1.28    "Notice and Administration Costs" means the reasonable costs, fees and expenses that are actually incurred by the Claims Administrator and/or Lead Counsel in connection with: (i) providing notices to the Settlement Class; and (ii) administering the Settlement, including but not limited to the Claims process, as well as the costs, fees and expenses incurred in connection with the Escrow Account.

1.29   "Officer" means any officer as that term is defined in Securities and Exchange Act Rule 16a-1(f).

1.30    "Parties" means Defendants and Lead Plaintiff, on behalf of itself and the Settlement Class.

1.31   "Plaintiff's Counsel" means Lead Counsel and all other legal counsel who, at the direction and under the supervision of Lead Counsel, performed services on behalf of Plaintiff and/or the Settlement Class in the Action.

1.32   "Plaintiff Releasees" means Lead Plaintiff, all other plaintiffs in the Action, Plaintiff's Counsel, and all other Settlement Class Members, as well as each of their respective current and former Officers, directors, agents, parents, affiliates, subsidiaries, successors, predecessors, assigns, assignees, employees, and attorneys, in their capacities as such.

1.33   "Plan of Allocation" means the proposed plan or formula for allocation of the Net Settlement Fund to Authorized Claimants as set forth in the Notice.  Any Plan of Allocation is not part of the Stipulation, and Defendant Releasees shall have no responsibility for the Plan of Allocation or its implementation and no liability with respect thereto.  Any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect the finality of the Judgment or any other orders entered by the Court pursuant to this Stipulation.

1.34   "Preliminary Approval Order" means the order to be entered by the Court preliminarily approving the Settlement and directing that notice of the Settlement be provided to the Settlement Class, in the form attached hereto as Exhibit A, or in such other form as may be approved in writing by all of the Parties acting by and through their respective counsel of record in the Action and approved by the Court.

17

1.35    "PSLRA" means the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended.

1.36    "Related Persons" means (i) with respect to Defendants, Defendants' Counsel, and each of their respective current and former, Officers, directors, agents, parents, affiliates, subsidiaries, insurers, reinsurers, successors, predecessors, assigns, assignees, employees, and attorneys, in their capacities as such; and (ii) with respect to the Individual Defendants, their respective spouses, Immediate Family members, heirs, successors, executors, estates, administrators, attorneys, agents, accountants, insurers or reinsurers, personal representatives, trusts, community property, and any other entity in which any of them has a controlling interest, and as to such entities, each and all of their predecessors, successors, past, present or future parents, subsidiaries, affiliates, and each of their respective past or present officers, directors, shareholders, agents, partners, principals, members, employees, attorneys, advisors, trustees, auditors and accountants, insurers and reinsurers.

1.37    "Released Claims" means all Released Defendants' Claims and all Released Plaintiff's Claims.

1.38    "Released Defendants' Claims" means all claims, demands, losses, rights, liability, or causes of action, in law or in equity, accrued or unaccrued, fixed or contingent, direct, individual or representative, of every nature and description whatsoever, whether known or unknown, or based on federal, state, local, statutory or common law or any other law, rule or regulation, (including the law of any jurisdiction outside the United States), that were or could have been asserted in the Action or could in the future be asserted in any forum, whether foreign or domestic, against Plaintiff Releasees by Defendants or any member of Defendant Releasees, or their successors, assigns, executors, administrators, representatives, attorneys and agents in

their capacity as such, which arise out of, relate to, or are based upon, the institution, prosecution, or settlement of the claims asserted in the Action against the Defendants.  Released Defendants' Claims do not include any claims relating to the enforcement of the Settlement and any claims against any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court.

       1.39    "Released Plaintiff's Claims" means any and all claims, demands, losses, rights, liability, or causes of action, in law or in equity, accrued or unaccrued, fixed or contingent, direct, individual or representative, of every nature and description whatsoever, whether known or unknown, or based on federal, state, local, statutory or common law or any other law, rule or regulation, (including the law of any jurisdiction outside the United States), that were or could have been asserted in the Action or could in the future be asserted in any forum, whether foreign or domestic, against Defendant Releasees by Class Representative or any member of the Settlement Class, or their successors, assigns, executors, administrators, representatives, attorneys and agents in their capacity as such, which arise out of, are based upon, concern or relate in any way to (i) any of the allegations, facts, transactions, events, matters, occurrences, acts, disclosures, oral or written statements, representations, omissions, failures to act, filings, publications, disseminations, press releases, or presentations involved, related to, set forth, alleged or referred to in the Action; or (ii) the purchase, acquisition, holding, sale, or disposition of any GTT securities during the Settlement Class Period.  "Released Plaintiff's Claims" shall not include any claims to enforce this Settlement, or any claims of any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted and approved by the Court.

1.40    "Releasee(s)" means each and any of the Defendant Releasees and each and any of the Plaintiff Releasees.

1.41    "Releases" means the releases set forth in ¶¶5.2-5.3 of this Stipulation.

1.42    "Settlement" means the settlement of the Action between Lead Plaintiff, on behalf of itself and the Settlement Class, and each of the Defendants on the terms and conditions set forth in this Stipulation.

1.43    "Settlement Amount" means twenty-five million dollars ($25,000,000).

1.44    "Settlement Class" or "Class" means all persons or entities who purchased or otherwise acquired publicly traded common stock of GTT from February 26, 2018 to August 7, 2019, inclusive, and who were damaged thereby.  Excluded from the Settlement Class are Defendants, the Officers and directors of GTT at all relevant times, and all such excluded persons' Immediate Family members, legal representatives, heirs, agents, affiliates, predecessors, successors and assigns, and any entity in which any excluded person has or had a controlling interest.  Also excluded from the Settlement Class are those persons who file valid and timely requests for exclusion in accordance with the Preliminary Approval Order.

1.45    "Settlement Class Period" or "Class Period" means the time period from February 26, 2018 to August 7, 2019, inclusive.

1.46    "Settlement Class Member" means each person or entity who or which is a member of the Settlement Class.

1.47    "Settlement Fund" means the Settlement Amount plus any and all interest earned thereon.

1.48    "Settlement Hearing" or "Final Approval Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

1.49    "Stipulation" means this Stipulation and Agreement of Settlement, including the recitals and Exhibits hereto, each of which is incorporated by reference as though set forth in the Stipulation itself.

1.50    "Summary Notice" means the Summary Notice of (i) Proposed Settlement and Plan of Allocation; (ii) Settlement Fairness Hearing; and (iii) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, in the form attached hereto as Exhibit A-3, to be published as set forth in the Preliminary Approval Order, or in such other form as may be approved in writing by all of the Parties acting by and through their respective counsel of record in the Action and approved by the Court.

1.51    "Taxes" means: all federal, state and/or local taxes of any kind (including any interest or penalties thereon) on any income earned by the Settlement Fund, including any taxes or tax detriments to which Defendants may be subject with respect to (i) any income or gains earned by the Settlement Fund for any period during which the Settlement Fund is not treated, or does not qualify, as a "qualified settlement fund" for federal or state income tax purposes; and (ii) the payment or reimbursement by the Settlement Fund of any taxes or tax detriments described in clause (i) of this definition.

1.52    "Tax Expenses" means any expenses and costs incurred in connection with the operation and implementation of ¶¶ 2.6-2.7 (including, without limitation, expenses of tax attorneys and/or accountants and/or other advisors and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in ¶2.6).

21

1.53    "Unknown Claims" means any Released Plaintiff's Claims that Lead Plaintiff or any other Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, and any Released Defendants' Claims that any Defendant or any other Defendant Releasee does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, which, if known by him, her, or it might have affected his, her, or its decision(s) with respect to this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Lead Plaintiff and Defendants shall expressly waive, and each of the other Plaintiff Releasees and Defendant Releasees shall be deemed to have waived, and by operation of the Judgment, shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

**A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

The Releasees acknowledge that they may hereafter discover facts in addition to or different from those which he, she, it or their counsel now knows or believes to be true with respect to the subject matter of the Released Claims but they are notwithstanding this potential entering into the Stipulation and intend it to be a full, final and permanent resolution of the matters at issue in this Action.  Lead Plaintiff and Defendants acknowledge, and each of the other Settlement Class Members and each of the other Plaintiff Releasees and Defendant Releasees shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement.

## 2.     The Settlement

### a.     The Settlement Fund

2.1     Subject to the terms of this Stipulation, Defendants shall cause to be paid, pursuant to insuring clause (A) of the applicable D&O insurance policy, the Settlement Amount into the Escrow Account designated by the Escrow Agent on or before thirty (30) business days after entry of the Preliminary Approval Order, provided that Lead Counsel shall have provided Defendants' Counsel with an appropriate IRS Form W-9 and wire transfer, ACH transfer, EFT and/or check payment instructions for the Escrow Agent (including name, telephone and email contact information and a physical address for the Escrow Agent) at least ten (10) business days before the date of such payment.

2.2     The payments described in ¶2.1 are the only payments to be made by or on behalf of any and all of the Defendant Releasees in connection with this Settlement.  All fees, costs, and expenses incurred by or on behalf of Lead Plaintiff and members of the Settlement Class associated with this Settlement, including, but not limited to, (a) any Taxes or Tax Expenses; (b) any Notice and Administration Costs; (c) any Litigation Expenses awarded by the Court; and (d) any attorneys' fees awarded by the Court, shall be paid from the Settlement Fund, and in no event shall any Defendant Releasee bear any responsibility or liability for any such fees, costs, or expenses.  Upon the payment in full of the Settlement Amount as set forth in paragraph 2.1 above, all of Defendants' obligations of performance pursuant to the Settlement shall be deemed fully satisfied, and, subject to the remaining terms set forth herein, no further performance shall be owed by Defendants.

b.       **Use of the Settlement Fund**

2.3       Subject to the terms and conditions of this Stipulation and the Settlement, the Settlement Fund shall be used to pay: (a) any Taxes or Tax Expenses; (b) any Notice and Administration Costs; (c) any Litigation Expenses awarded by the Court; and (d) any attorneys' fees awarded by the Court.  The balance remaining in the Settlement Fund, that is, the Net Settlement Fund, shall be distributed to Authorized Claimants as provided in ¶¶4.1-4.14 below, or as otherwise ordered by the Court.

2.4       Except as provided herein or pursuant to orders of the Court, the Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date.  All funds held by the Escrow Agent shall be deemed to be in the custody of the Court, and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to the terms of this Stipulation or further order(s) of the Court.  The Escrow Agent shall invest any funds in the Escrow Account exclusively in United States Treasury Bills (or a mutual fund invested solely in such instruments) and shall collect and reinvest all interest accrued thereon, except that any residual cash balances up to the amount that is insured by the FDIC may be deposited in any account that is fully insured by the FDIC.  In lieu of purchasing such Treasury Bills, all or any portion of the funds held by the Escrow Agent may be deposited in any account that is fully insured by the FDIC or backed by the full faith and credit of the United States.  All risks related to the investment of the Settlement Fund shall be borne by the Escrow Agent, and the Defendant Releasees shall have no responsibility for, interest in, or liability whatsoever with respect to any investment decisions or actions taken, or any transactions executed by, the Escrow Agent.

2.5     The Escrow Agent shall not disburse the Settlement Fund except as provided in the Stipulation or by an order of the Court.

2.6     The Parties agree that the Settlement Fund is intended to be a qualified settlement fund within the meaning of Treasury Regulation § 1.468B-1 and that Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k) and (l)) for the Settlement Fund.  Lead Counsel shall also be responsible for causing payment to be made from the Settlement Fund of any Taxes and Tax Expenses owed with respect to the Settlement Fund and shall cause the Defendants to be reimbursed from the Settlement Fund for any Taxes and Tax Expenses to which Defendants are subject.  The Defendant Releasees shall not have any liability or responsibility for any such Taxes and Tax Expenses.  Upon written request, Defendants will timely provide to Lead Counsel the statement described in Treasury Regulation § 1.468B-3(e).  Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation back election," as described in Treasury Regulation § 1.468B-1(j), to cause the qualified settlement fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.  Such elections shall be made in compliance with procedures and requirements contained in such regulations.  It shall be the responsibility of Lead Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to timely occur.

25

2.7     All Taxes and Tax Expenses shall be paid out of the Settlement Fund, and shall be timely paid by the Escrow Agent pursuant to the disbursement instructions to be set forth in the Escrow Agreement and without further order of the Court.   The Escrow Agent shall be authorized (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation § 1.468B-2(l)(2)).   Any tax returns prepared for the Settlement Fund (as well as any election set forth therein) shall be consistent with the previous paragraph and in all events shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.   The Defendant Releasees shall have no responsibility or liability for the acts or omissions of the Claims Administrator, the Escrow Agent, Lead Counsel, or their agents with respect to the payment of Taxes, as described herein, or the filing of any tax returns or other documents in connection with the Settlement Fund.

2.8     The Settlement is not a claims-made settlement.   Upon the occurrence of the Effective Date, no Defendant Releasee, or any person or entity who or which paid any portion of the Settlement Amount, shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever, including without limitation, the number of Claim Forms submitted, the collective amount of recognized claims of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund.   In no instance shall any Defendant Releasee be required to pay any amount other than as specified in Paragraph 2.1.

2.9     Notwithstanding the fact that the Effective Date of the Settlement has not yet occurred, Lead Counsel may pay from the Settlement Fund, without further approval from Defendants or further order of the Court, reasonable Notice and Administration Costs actually incurred and paid or payable.  Such costs and expenses shall include, without limitation, the actual costs of printing and mailing the Notice, publishing the Summary Notice, reimbursements to nominee owners for forwarding the Notice to their beneficial owners, the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice, administering the Settlement (including processing the submitted Claims), and the fees, if any, of the Escrow Agent.  In the event that the Settlement is terminated pursuant to the terms of this Stipulation, all Notice and Administration Costs paid or incurred, including any related fees, shall not be returned or repaid to any of the Defendant Releasees, or any person or entity who or which paid any portion of the Settlement Amount.

### 3.     Class Certification and Preliminary Approval Order

3.1     Solely for purposes of the Settlement and for no other purpose, the Parties stipulate and agree to: (a) certification of the Action, as alleged in the Second Amended Complaint, as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Settlement Class; (b) certification of Lead Plaintiff as Class Representative for the Settlement Class; and (c) appointment of Lead Counsel as Class Counsel, and Liaison Counsel as Liaison Class Counsel for the Settlement Class, pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

3.2     As soon as practicable after execution of the Stipulation, Lead Plaintiff will promptly move for preliminary approval of the Settlement and certification of the Settlement Class for settlement purposes only, which motion shall be unopposed by Defendants.  Lead

Counsel shall submit the Stipulation together with its exhibits (the "Exhibits") to the Court. Concurrently with the motion for preliminary approval, Lead Plaintiff shall apply to the Court for, and Defendants shall agree to, entry of the Preliminary Approval Order, in the form attached hereto as Exhibit A, or in such other form as may be approved in writing by all the Parties acting by and through their respective counsel of record in the Action and entered by the Court, requesting, *inter alia*, the preliminary approval of the Settlement set forth in this Stipulation, approval for mailing the Notice in the form of Exhibit A-1 attached hereto, and for publication of the Summary Notice in the form of Exhibit A-3 attached hereto, or in such other forms as may be approved in writing by all of the Parties acting by and through their respective counsel of record in the Action and approved by the Court.

3.3     In addition, Lead Plaintiff's motion shall request that the Court hold the Final Approval Hearing.  At or prior to the Final Approval Hearing, Lead Counsel will request that the Court approve the proposed Plan of Allocation, reimbursement of Lead Plaintiff's costs and expenses directly related to their representation of the Settlement Class, and any of Plaintiff's Counsel's fees and expenses.

**4.**     **Notice and Settlement Administration**

4.1     As part of the Preliminary Approval Order, Lead Plaintiff shall seek appointment of a Claims Administrator.  The Claims Administrator shall administer the Settlement, including, but not limited to, the process of receiving, reviewing, and approving or denying Claims, under Lead Counsel's supervision and subject to the jurisdiction of the Court.   Other than GTT's obligation to provide shareholder information as provided in ¶4.2 below, none of the Defendant Releasees shall have any involvement in or any responsibility, authority, or liability whatsoever for the selection of the Claims Administrator, the Plan of Allocation, the administration of the

Settlement, the Claims process, or disbursement of the Net Settlement Fund, and shall have no liability whatsoever to any person or entity, including, but not limited to, Lead Plaintiff, any other Settlement Class Members, or Lead Counsel, in connection with the foregoing. Defendants' Counsel shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms.

4.2     In accordance with the terms of the Preliminary Approval Order to be entered by the Court, Lead Counsel shall cause the Claims Administrator to mail the Notice and Proof of Claim Form to those members of the Settlement Class as may be identified through reasonable effort.  Lead Counsel shall also cause the Claims Administrator to have the Summary Notice published in accordance with the terms of the Preliminary Approval Order to be entered by the Court.  For the purposes of identifying and providing notice to the Settlement Class, within five (5) business days of the date of entry of the Preliminary Approval Order, GTT shall provide or cause to be provided to the Claims Administrator (at no cost to the Settlement Fund, Lead Counsel, or the Claims Administrator) records reasonably available to GTT or its transfer agent concerning the identity and last known address of Settlement Class Members, in electronic form or other form as is reasonably available to GTT or its transfer agent, which information the Claims Administrator shall treat and maintain as confidential.

4.3     The Claims Administrator shall receive Claims and determine first, whether the Claim is a valid Claim, in whole or part, and second, each Authorized Claimant's pro rata share of the Net Settlement Fund based upon each Authorized Claimant's recognized claim compared to the total recognized claims of all Authorized Claimants (as set forth in the Plan of Allocation set forth in the Notice attached hereto as Exhibit A-1, or in such other plan of allocation as the Court approves).

4.4     The Plan of Allocation proposed in the Notice is not a necessary term of the Settlement or of this Stipulation and it is not a condition of the Settlement or of this Stipulation that any particular plan of allocation be approved by the Court.  Lead Plaintiff and Lead Counsel may not cancel or terminate the Settlement (or this Stipulation) based on this Court's or any appellate court's ruling with respect to the Plan of Allocation or any other plan of allocation in this Action.  Defendant Releasees shall not object in any way to the Plan of Allocation or any other plan of allocation in this Action.  No Defendant Releasees shall have any involvement with or liability, obligation, or responsibility whatsoever in connection with the Plan of Allocation or any other Court-approved plan of allocation.

4.5     Any Settlement Class Member who does not submit a valid Claim Form by the deadline set by the Court (unless and to the extent the deadline is extended by the Court) will not be entitled to receive any distribution from the Net Settlement Fund, but will, nevertheless, upon the occurrence of the Effective Date, be bound by all of the terms of this Stipulation and Settlement (including the terms of the Judgment) and the releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against any Defendant Releasee with respect to the Released Plaintiff's Claims.

4.6     Any Settlement Class Member who or which does not timely and validly request exclusion from the Settlement Class in the manner stated in the Preliminary Approval Order: (a) shall be deemed to have waived his, her or its right to be excluded from the Settlement Class; (b) shall be forever barred from requesting exclusion from the Settlement Class in this or any other proceeding; (c) shall be bound by the provisions of this Stipulation, the Settlement, and all proceedings, determinations, orders and judgments in the Action relating to the Settlement,

including, but not limited to, the Judgment, and the Releases provided for therein whether favorable or unfavorable to the Settlement Class; and (d) shall be barred from commencing, maintaining or prosecuting any of the Released Claims against any of the Defendant Releasees.

4.7    Lead Counsel shall be responsible for supervising the administration of the Settlement and the disbursement of the Net Settlement Fund subject to Court approval.   No Defendant Releasee shall be permitted to review, contest or object to any Claim Form, or any decision of the Claims Administrator or Lead Counsel with respect to accepting or rejecting any Claim for payment by a Settlement Class Member.  Lead Counsel shall have the right, but not the obligation, to waive what they deem to be formal or technical defects in any Claim Forms submitted in the interests of achieving substantial justice.

4.8    The Net Settlement Fund shall be distributed to Authorized Claimants only after the later of the Effective Date; the Court having approved a plan of allocation in an order that has become Final; and the Court issuing a Class Distribution Order that has become Final.

4.9    For purposes of determining the extent, if any, to which a Settlement Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(a)    Each Settlement Class Member shall be required to submit a Claim Form, in the form attached hereto as Exhibit A-2, or in such other form as may be approved in writing by all of the Parties acting by and through their respective counsel of record in the Action and approved by the Court, supported by such documents as are designated therein, including proof of the Claimant's loss, or such other documents or proof as the Claims Administrator or Lead Counsel, in their discretion, may deem acceptable;

(b)      All Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice, unless extended by the Court.  Any Settlement Class Member who fails to submit a Claim Form by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless by Order of the Court such Settlement Class Member's Claim Form is accepted), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment and by the releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against any Defendant Releasee with respect to any Released Claim. Provided that it is mailed by the claim-submission deadline, a Claim Form shall be deemed to be submitted when postmarked, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon.  In all other cases, the Claim Form shall be deemed to have been submitted on the date when actually received by the Claims Administrator;

(c)      Each Claim Form shall be submitted to and reviewed by the Claims Administrator who shall determine in accordance with this Stipulation and the Plan of Allocation the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below as necessary;

(d)      Claim Forms that do not meet the submission requirements may be rejected.  Prior to rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing, to give the Claimant the chance to remedy any curable deficiencies in the Claim Form submitted.  The Claims Administrator shall notify, in a timely fashion and in writing, all Claimants whose Claim the Claims Administrator proposes to

reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose Claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below; and

(e)     If any Claimant whose Claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) days after the date of mailing of the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.   If a dispute concerning a Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court, on reasonable notice to Defendants' Counsel.

4.10    Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided, however, that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's Claim.  No discovery shall be allowed on the merits of this Action or of the Settlement in connection with the processing of Claim Forms.

4.11    Lead Counsel will apply to the Court, on reasonable notice to Defendants' Counsel, for a Class Distribution Order: (a) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (b) approving payment of any administration fees and expenses associated with the administration of the Settlement from the Escrow Account; and (c) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account.

4.12    Payment pursuant to the Class Distribution Order shall be final and conclusive against all Settlement Class Members.  All Settlement Class Members who do not submit a Claim or whose Claims are not approved by the Court for payment shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment to be entered in this Action; and by the releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action against any and all Defendant Releasees with respect to any and all of the Released Claims.

4.13    No Claimant or Settlement Class Member shall have any claim against Lead Plaintiff, Plaintiff's Counsel, Defendants' Counsel, any Parties' damages experts, the Claims Administrator (or any other agent designated by Lead Counsel), or the Defendant Releasees based on any investments, costs, expenses, administration, allocations, calculation, payments, the withholding of taxes (including interest and penalties) owed by the Settlement Fund (or any losses incurred in connection therewith), or distributions that are made substantially in accordance with this Stipulation and the Settlement, the plan of allocation approved by the Court, or further orders of the Court.

4.14    All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.  All Settlement Class Members and Parties to this Settlement expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

5.      **Release of Claims**

5.1      The satisfaction of the obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Action, as alleged in the Second Amended Complaint, as against Defendant Releasees and as to any and all Released Claims.

5.2      Pursuant to the Judgment without further action by anyone, upon the Effective Date of the Settlement, Lead Plaintiff and each of the other Settlement Class Members, on behalf of themselves, and their respective Related Persons, heirs, executors, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have, and by operation of this Stipulation, of law, and of the Judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived, dismissed, and discharged each and every one of the Released Plaintiff's Claims against the Defendants and the other Defendant Releasees, and shall forever be barred and enjoined from commencing, instituting, prosecuting, or maintaining any or all of the Released Plaintiff's Claims against any of the Defendant Releasees, whether or not such Settlement Class Member executes and delivers a Proof of Claim Form, seeks or obtains a distribution from the Settlement Fund, is entitled to receive a distribution under the Plan of Allocation approved by the Court, or has objected to any aspect of the Stipulation or the Settlement, the Plan of Allocation, or Lead Counsel's application for an award of attorneys' fees or Litigation Expenses.  This release shall not apply to any Settlement Class Member who timely and properly excludes himself, herself or itself from the Settlement Class.

5.3      Pursuant to the Judgment, without further action by anyone, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns, in their capacities as such, shall

be deemed to have, and by operation of this Stipulation, of law, and of the Judgment, shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Defendants' Claim against the Plaintiff Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Plaintiff Releasees.  This release shall not apply to any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court.

5.4     Upon the Effective Date, Lead Plaintiff and each of the other Settlement Class Members and anyone claiming through or on behalf of any of them, are forever barred and enjoined from commencing, instituting, maintaining, or continuing to prosecute any action or proceeding in any court of law or equity, arbitration tribunal, administrative forum, or other forum of any kind, asserting any Released Plaintiff's Claims against any of the Defendant Releasees.

5.5     Upon the Effective Date, to the extent allowed by law, this Stipulation shall operate conclusively as an estoppel and full defense in the event, and to the extent, of any claim, demand, action, or proceeding brought by a Settlement Class Member against any of the Defendant Releasees with respect to any Released Plaintiff's Claims, or brought by a Defendant against any of the Plaintiff Releasees with respect to any Released Defendants' Claim.

5.6     Notwithstanding ¶¶5.2-5.5 above, nothing in the Judgment shall restrict or impair the rights of any Party to enforce or effectuate the terms of this Stipulation or the Judgment.

5.7     The Judgment shall, among other things, provide for the dismissal with prejudice of the Action, as alleged in the SAC, against the Defendant Releasees, without costs to any Party, except for the payments expressly provided for herein.

6.      **Terms of the Judgment**

6.1      If the Settlement contemplated by this Stipulation is approved by the Court, Lead Counsel and Defendants' Counsel shall request that the Court enter a Judgment, in the form attached hereto as Exhibit B.

7.      **Attorneys' Fees and Litigation Expenses**

7.1      Lead Counsel will apply to the Court for a collective award of attorneys' fees to Plaintiff's Counsel to be paid from (and out of) the Settlement Fund.  Lead Counsel also will apply to the Court for reimbursement of Litigation Expenses, which may include a request for reimbursement of Lead Plaintiff's time, costs and expenses directly related to their representation of the Settlement Class, to be paid from (and out of) the Settlement Fund.  Lead Counsel's application for an award of attorneys' fees or Litigation Expenses is not the subject of any agreement between Defendants and Lead Plaintiff other than what is set forth in this Stipulation.

7.2      Any attorneys' fees and Litigation Expenses that are awarded by the Court shall be paid to Lead Counsel immediately upon the Court's issuance of an order awarding such fees and expenses, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Lead Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund if the Settlement is terminated pursuant to the terms of this Stipulation or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the award of attorneys' fees or Litigation Expenses is reduced or reversed, and such order reducing or reversing the award has become Final.  Lead Counsel shall make the appropriate refund or repayment in full (including interest thereon at the same rate as would have been earned had those sums remained in the Escrow Account) no later than thirty (30) days after: (a) receiving from Defendants' Counsel

notice of the termination of the Settlement; or (b) any order reducing or reversing the award of attorneys' fees or Litigation Expenses has become Final.  An award of attorneys' fees or Litigation Expenses is not a necessary term of this Stipulation and is not a condition of the Settlement embodied herein.  Lead Counsel agrees that they are subject to the jurisdiction of the Court for the purpose of enforcing this paragraph.  Neither Lead Plaintiff nor Lead Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees or Litigation Expenses.

7.3    Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiff's Counsel in a manner which they, in good faith, believe reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.  Defendant Releasees shall have no responsibility for or liability whatsoever with respect to the payment, allocation, or award of attorneys' fees or Litigation Expenses. The attorneys' fees and Litigation Expenses that are awarded to Plaintiff's Counsel shall be payable solely from the Settlement Fund in the Escrow Account.

## 8.    **Conditions of Settlement**

8.1    The Effective Date of this Stipulation shall be conditioned on the occurrence or waiver of all of the following events:

(a)    entry of the Preliminary Approval Order, in the form set forth in Exhibit A attached hereto, in accordance with Section 3 above;

(b)    the Settlement Amount has been deposited into the Escrow Account in accordance with the provisions of Paragraph 2.1 above;

(c)    entry of the Judgment in accordance with Paragraph 6.1 above;

(d)    the Judgment becoming Final, as defined in Paragraph 1.18 above; and

(e)      that the Settlement is not otherwise terminated pursuant to the terms set forth in this Stipulation.

8.2      If all of the conditions specified in Paragraph 8.1 above are not met, then this Stipulation shall be canceled and terminated subject to Paragraph 9.3 below unless Lead Plaintiff and Defendants mutually agree in writing to proceed with this Stipulation.

**9.      Right of Termination and Effects Thereof**

9.1      Defendants and Lead Plaintiff shall each have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to counsel for the other Parties within thirty (30) days after the date on which any of the following occurs:

(a)      the Court declines to enter the Preliminary Approval Order in all material respects;

(b)      the Court declines to enter the Judgment in all material respects;

(c)      the Judgment is modified or reversed in any material respect on appeal;

(d)      in the event that the Court enters a judgment other than the one in the form of Exhibit B attached hereto, and neither of the Parties elects to terminate the Settlement, the date that such other judgment is modified or reversed in any material respect on appeal.

9.2      If, prior to the Final Approval Hearing, Persons who otherwise would be Settlement Class Members have filed with the Court valid and timely requests for exclusion ("Requests for Exclusion") from the Settlement Class in accordance with the provisions of the Preliminary Approval Order and the Notice, and such Persons in the aggregate have purchased or otherwise acquired GTT common stock in an amount that equals or exceeds the sum specified in a separate supplemental agreement between the Parties (the "Supplemental Agreement"), GTT

shall have the option, but not the obligation, to terminate this Stipulation in accordance with the procedures set forth in the Supplemental Agreement ("Opt-Out Termination Option"). The Supplemental Agreement is confidential and will not be filed with the Court unless requested by the Court or a dispute among the Parties concerning its interpretation or application arises, but the Parties will file a statement identifying the existence of the Supplemental Agreement pursuant to Federal Rule of Civil Procedure 23(e)(3), and reference the Supplemental Agreement in the Notice. Copies of all Requests for Exclusion received, together with copies of all written revocations of Requests for Exclusion (if any), shall be delivered to Defendants' Counsel within five (5) days of receipt thereof.

9.3    Unless otherwise ordered by the Court, in the event this Stipulation shall terminate, or be canceled, or shall not become effective for any reason, within five (5) business days after written notification of such event is sent by Defendants' Counsel or Lead Counsel to the Escrow Agent, the Escrow Agent for the Settlement Fund shall, upon written instructions from Defendants' Counsel, cause the Settlement Fund, including any attorneys' fees and costs paid from the Settlement Fund pursuant to Section 7 above, to revert back to the party that made the deposit into the Settlement Fund, together with any interest earned thereon, less any deductions for: (1) any Taxes and Tax Expenses pursuant to Paragraphs 2.6-2.7 above; and (2) any amounts reasonably and actually paid, incurred or due and owing pursuant to Paragraph 2.9 above in connection with notice and administration of the Settlement provided for herein. If this Stipulation is terminated pursuant to its terms, the Escrow Agent, at the request of Defendants or Lead Plaintiff, shall apply for any tax refund owed to the Settlement Fund and pay the proceeds of the tax refund, after deduction of any fees and expenses incurred in connection with such application(s) for refund, to Defendants (or their designate(s)).

9.4     If this Stipulation is terminated pursuant to its terms, each of the Parties shall be deemed to have reverted to his, her or its status prior to the execution of this Stipulation, and they shall proceed in all respects as if this Stipulation had not been executed and the related orders had not been entered, shall retain all of their respective claims and defenses in the Action, and shall revert to their respective positions in the Action as of November 6, 2020.  In such event, the terms and provisions of the Stipulation, with the exception of provisions of Paragraphs 2.9, 7.2, 9.4, 10.1, 11.24, shall have no further force and effect with respect to each of the Parties and shall not be used in this Action or in any other proceeding for any purpose.

9.5     For the avoidance of doubt, no order of the Court or modification or reversal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, costs, and expenses awarded by the Court shall constitute a condition to the Effective Date or grounds for cancellation or termination of the Stipulation.

**10.     No Admission of Wrongdoing**

10.1     Neither this Stipulation nor the Settlement set forth herein, whether or not consummated, nor any facts or terms of this Stipulation, negotiations, discussions, proceedings, acts performed or documents executed pursuant to or in furtherance of this Stipulation or the Settlement:

(a)     shall be (i) offered against any of the Defendant Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendant Releasees with respect to (a) the truth of any allegations by Lead Plaintiff or any Settlement Class Member; (b) the validity of any claim that was or could have been asserted in this Action or in any other litigation; (c) the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation; (d) any liability, negligence, fault, or

41

other wrongdoing of any kind of any of the Defendant Releasees; or (e) any damages suffered by Plaintiff or the Settlement Class; or (ii) in any way referred to for any other reason against any of the Defendant Releasees, in any civil, criminal, or administrative action or proceeding (including any arbitration) other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(b)     shall be (i) offered against any of the Plaintiff Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by any of the Plaintiff Releasees (a) that any of their claims are without merit, that any of the Defendant Releasees had meritorious defenses, or that damages recoverable under the Second Amended Complaint would not have exceeded the Settlement Amount; or (b) with respect to any liability, negligence, fault or wrongdoing of any kind; or (ii) in any way referred to for any other reason as against any of the Plaintiff Releasees, in any civil, criminal, or administrative action or proceeding (including any arbitration) other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; or

(c)     shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; *provided, however,* that if this Stipulation is approved by the Court, the Parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement.

11. **Miscellaneous Provisions**

11.1    This Stipulation and the Exhibits attached hereto constitute the entire agreement between the Parties with regard to the subject matter hereof and supersede any prior or contemporaneous written or oral agreements or understandings between the Parties.

11.2    No modification or amendment of this Stipulation shall be valid unless made in writing and signed by or on behalf of each party hereto, or their respective successors-in-interest. No representations, warranties, or inducements have been made to any party concerning this Stipulation or its Exhibits, other than the representations and warranties contained and memorialized in such documents.  Except as otherwise provided for herein, each party shall bear his, her, or its own attorneys' fees and costs and expenses.

11.3    As set forth in the Class Action Fairness Act of 2005 ("CAFA"), GTT shall timely serve a CAFA notice within ten (10) calendar days of the filing of this Stipulation with the Court, and shall provide Lead Counsel with a copy of such notice within five (5) calendar days of such service.

11.4    The Parties intend this Stipulation and the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by Lead Plaintiff and any other Settlement Class Members against the Defendant Releasees with respect to the Released Plaintiff's Claims.  Accordingly, except in the event of the termination of this Settlement, Lead Plaintiff, and their counsel, and Defendants, and their counsel, agree not to assert in any forum that this Action was brought by Lead Plaintiff or defended by Defendants in bad faith and without a reasonable basis.  No Party shall assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the institution, prosecution, defense, or settlement of this Action.  No Party shall assert any claims or allegations of any violation of either Parties'

43

discovery obligations under the Federal Rules.  The Parties agree that the amounts paid and the other terms of the Settlement were negotiated at arm's length and in good faith by the Parties, including through a mediation process, and reflect the Settlement that was reached voluntarily after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses.

11.5    While retaining their right to deny that the claims asserted in the Action, as alleged in the Second Amended Complaint, were meritorious, Defendants and their counsel, in any statement made to any media representative (whether or not for attribution) will not assert that the Action was commenced or prosecuted in bad faith, nor will they deny that the Action was commenced and prosecuted in good faith and is being settled voluntarily after consultation with competent legal counsel.  Likewise, while retaining their right to assert their claims in the Action, as alleged in the Second Amended Complaint, were meritorious, Lead Plaintiff and its counsel, in any statement made to any media representative (whether or not for attribution) will not assert that Defendants' defenses were asserted in bad faith, nor will they deny that Defendants defended the Action in good faith and that the Action is being settled voluntarily after consultation with competent legal counsel.  In all events, Lead Plaintiff, and its counsel, and Defendants, and their counsel, shall not make any accusations of wrongful or actionable conduct by either Party concerning the prosecution, defense, and resolution of the Action, and shall not otherwise suggest that the Settlement constitutes an admission of any claim or defense alleged.

11.6    Defendants and any Defendant Releasee may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense, claim, or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith

settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

11.7    All agreements made, and orders entered, during the course of the Action relating to the confidentiality of information shall survive this Settlement.

11.8    All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.   Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto, the terms of the Stipulation shall prevail.

11.9    Lead Counsel, on behalf of the Settlement Class, is expressly authorized to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to this Stipulation to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to this Stipulation on behalf of the Settlement Class which they deem appropriate.

11.10   All counsel and any other Person executing this Stipulation and any of the Exhibits hereto, or any related Settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

11.11   Lead Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court approval of the Preliminary Approval Order and the Settlement, as embodied in this Stipulation, and to use efforts reasonably necessary to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

11.12   This Stipulation may be executed in one or more counterparts, including by signature transmitted by facsimile or email, or by a .pdf/.tif image of the signature transmitted via email. The signatures so transmitted shall be given the same effect as the original signatures. All executed counterparts and each of them shall be deemed to be one and the same instrument.

11.13   This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties, including any and all Releasees and any corporation, partnership, or other entity into or with which any Party hereto may merge, consolidate, or reorganize.

11.14   This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations among the Parties and all Parties have contributed substantially and materially to the preparation of this Stipulation.

11.15   All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.   In computing any period of time prescribed or allowed by the terms of this Stipulation or by order of Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.   The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, in which case the period shall run until the end of the next day that is not one of the aforementioned days.   As used in the preceding sentence, "legal holiday" includes New Year's Day, Martin Luther King, Jr. Day, Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day, Christmas Day and any other appointed as a federal holiday.

11.16   The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

46

11.17   The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and Litigation Expenses to Plaintiff's Counsel, and enforcing the terms of this Stipulation, including the Plan of Allocation (or such other plan of allocation as may be approved by the Court) and the distribution of the Net Settlement Fund to Settlement Class Members.

11.18   The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

11.19   Any action arising under or to enforce this Stipulation or any portion thereof, shall be commenced and maintained only in this Court.

11.20   It is understood and agreed that the Settlement Amount contains the proceeds of director and officer insurance pursuant to insuring clause (A) of the applicable policy, and is provided, inter alia, for the benefit of, and in exchange for the Releases given to, the Individual Defendants.  Neither the Settlement Amount nor the Settlement Fund is a preference, voidable transfer, fraudulent transfer or similar transaction by or on behalf of GTT.   In the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof to be a preference, voidable transfer, fraudulent transfer, or similar transaction and any portion thereof is required to be returned, then, at the election of Lead Plaintiff, Lead Plaintiff and Defendants shall jointly move the Court to vacate and set aside the releases given and the Judgment, in which event the releases and Judgment shall be null and void, and the Parties shall be restored to their respective positions in the litigation as provided in Paragraphs 9.3 and 9.4 above and any cash amounts in the Settlement Fund (less any Taxes paid, due or owing with respect to the Settlement Fund and less any Notice

and Administration Costs actually incurred, paid or payable) shall be returned as provided herein.

11.21   This Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Virginia, and the construction, interpretation, operation, effect and validity of this Stipulation, the Supplemental Agreement and all documents necessary to effectuate it shall be governed by the internal laws of the State of Virginia without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

11.22   If any Party is required to give notice to another Party under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery, facsimile or email transmission, with confirmation of receipt.   Any written notice required pursuant to or in connection with this Stipulation shall be addressed to counsel as follows:

> For Lead Plaintiff:
>
> Lester R. Hooker
> Saxena White P.A.
> 7777 Glades Road, Suite 300
> Boca Raton, FL 33434
> Office: (561) 206-6708
> Fax: (561) 394-3382
> Email: lhooker@saxenawhite.com
>
> For Defendants:
>
> J. Wesley Earnhardt
> Cravath, Swaine & Moore LLP
> 825 Eighth Ave.
> New York, NY 10019
> Office:  (212) 474-1138
> Fax:  (212) 474-3700
> Email:  wearnhardt@cravath.com

11.23   No opinion or advice concerning the tax consequences of the proposed Settlement to individual Settlement Class Members is being given or will be given by the Parties or their counsel; nor is any representation or warranty in this regard made by virtue of this Stipulation.  It is the sole responsibility of each Settlement Class Member to determine the amount of and pay his, her or its own taxes, plus any penalties and interest, on any amount received pursuant to the Settlement, and the Defendant Releasees shall have no liability for such taxes, penalties or interest.  It is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.

11.24   All agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Stipulation whether or not the Stipulation is approved by the Court and whether or not the Stipulation is consummated, or the Effective Date occurs.   The parties' confidentiality obligations shall include, to the extent possible, negotiations, discussions, acts performed, agreements, drafts, documents signed and proceedings in connection with the Stipulation that remain confidential following the Effective Date.

**IN WITNESS WHEREOF**, the Parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys dated as of December 14, 2020.

**SAXENA WHITE P.A.**

By: _____

Maya Saxena
Joseph E. White, III
Lester R. Hooker
Dianne M. Pitre
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
E-mail: msaxena@saxenawhite.com
         jwhite@saxenawhite.com

49

lhooker@saxenawhite.com
dpitre@saxenawhite.com

-and-

Steven B. Singer
Kyla Grant
Sara DiLeo
10 Bank Street, 8th Floor
White Plains, NY 10606
Telephone: (914) 437-8551
Facsimile:  (888) 631-3611
E-mail:ssinger@saxenawhite.com
            kgrant@saxenawhite.com
            sdileo@saxenawhite.com

*Lead Counsel for Lead Plaintiff and the proposed*
*Settlement Class*

**COHEN MILSTEIN SELLERS & TOLL PLLC**

Steven J. Toll (Va. Bar No. 15300)
Daniel S. Sommers (*pro hac vice*)
1100 New York Avenue, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
stoll@cohenmilstein.com
dsommers@cohenmilstein.com


*Liaison Counsel for Lead Plaintiff and the proposed*
*Settlement Class*



**CRAVATH, SWAINE & MOORE LLP**

By: _____

J. Wesley Earnhardt
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Tel: (212) 474-1000

wearnhardt@cravath.com

*Counsel for Defendants GTT Communications, Inc., Richard D. Calder, Jr., Chris McKee, Michael Sicoli and Gina Nomellini*

**TROUTMAN PEPPER HAMILTON SANDERS LLP**

Dabney J. Carr (Va. Bar No. 28679)
1001 Haxall Point
15th Floor
Richmond, VA 23219
Tel: (804) 697-1200
dabney.carr@troutman.com

*Counsel for Defendants GTT Communications, Inc., Richard D. Calder, Jr., Chris McKee, Michael Sicoli and Gina Nomellini*